PHILLIPS, Plaintiff in error, v. STATE, Defendant in error.[*]

*December 3, 1965—January 7, 1966.*

---

[*] Motion for rehearing denied, without costs, on April 12, 1966.

522

524

For the plaintiff in error there was a brief and oral argument by *Philip L. Padden* of Milwaukee.

For the defendant in error the cause was argued by *Ben J. Wiener*, deputy district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette*, attorney general, *William A. Platz*, assistant attorney general, and *Hugh R. O'Connell*, district attorney.

HALLOWS, J. The defendant initially contends the confessions should not have been admitted in evidence because he was denied counsel in violation of the Sixth amendment to the United States constitution which is made applicable to the states by the Fourteenth amendment. *Gideon v. Wainwright* (1963), 372 U. S. 335, 342, 83 Sup. Ct. 792, 9 L. Ed. (2d) 799. This contention of the defendant raises an *Escobedo* type of problem.[1] The defendant claims he asked for counsel during the interrogation after his arrest and the police denied his request and additionally argues if we find he did not request counsel, we should reconsider our interpretation of *Escobedo* and follow *United States ex rel. Russo v. New Jersey* (3d Cir. 1965), 351 Fed. (2d) 429, which excluded a confession made during the accusatorial stage of the interrogation although no request for counsel was made. Recently in *Neuenfeldt v. State*, ante, p. 20, 138 N. W. (2d) 252, we reconsidered our interpretation of *Escobedo* as stated in *Browne v. State* (1964), 24 Wis. (2d) 491, 129 N. W. (2d) 175, 131 N. W. (2d) 169, and in *State ex rel. Goodchild v. Burke* (1965), 27 Wis. (2d) 244, 133 N. W. (2d) 753. We there held that *Escobedo* should be confined to its facts including the request for counsel and its denial. *Russo,* which applied *Escobedo* retrospectively,

[1] *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. (2d) 977.

was discussed and its doctrine rejected with the statement that this court would adhere to its prior interpretation until the supreme court of the United States made a further pronouncement on the problem which it now has under consideration.

Whether the defendant requested counsel during interrogation and was refused by the police is a mixed question of fact and constitutional law which was passed upon by the trial court at the hearing on the admissibility of the confession. But since the question is whether a constitutional right has been violated, it is the subject of our independent determination on this review. *Ashcraft v. Tennessee* (1944), 322 U. S. 143, 64 Sup. Ct. 921, 88 L. Ed. 1192; *Spano v. New York* (1959), 360 U. S. 315, 79 Sup. Ct. 1202, 3 L. Ed. (2d) 1265.

The evidence as is usual on such an issue is in conflict. Under the defendant's version he asked about 2 p. m. to telephone his mother so he might get an attorney and was put off until after he made a confession. His mother had no phone and he did not live at home, but the defendant explained he wanted to call a neighbor who would reach his mother. His testimony as to which detectives said what is somewhat contradictory. On the other hand the testimony of the detectives is sufficiently convincing although minimum on this important point. One detective did not recall the defendant's requesting the use of the phone and the other testified the request was made after the defendant confessed. It is clear the defendant testified he knew he had a right to the advice of counsel and he admits he was advised of his constitutional right to remain silent. There is dispute in the evidence, however, whether the defendant was advised he could have counsel. At the conclusion of the testimony, the trial judge found the confession was a free and deliberate choice of the defendant, but more important on this issue, that under the circumstances the confession was "constitutionally antiseptic and not in violation of any of his

constitutional rights." Thus while the trial court did not make a specific finding that a request was not made, it did make an ultimate fact-finding which we think under the circumstances negated the making of the request for counsel. From the record it is apparent such effect was understood by the defendant. The determination of the question of voluntariness turns primarily on credibility, and on this record we are inclined to agree with the finding of the trial court. We suggest, however, that for the aid of this court in its determination of a constitutional question and to avoid a possible hearing on collateral attack, that trial courts make specific and complete findings of the facts underlying a constitutional question. *State ex rel. Goodchild v. Burke* (1965), 27 Wis. (2d) 244, 133 N. W. (2d) 753.

The defendant next contends the confessions were not his free and voluntary act and were obtained by mental coercion and to admit them in evidence was violation of his right against self-incrimination guaranteed by the Fifth amendment of the United States constitution. In considering the voluntariness of a confession in reference to the Fifth amendment now applicable to the states, the federal standard must be used to determine the deliberateness of choice. In *Neuenfeldt, supra,* we pointed out that in *State v. Hoyt* (1964), 21 Wis. (2d) 284, 124 N. W. (2d) 47, 128 N. W. (2d) 645, "a confession to be saved from constitutional contamination must be the result of a deliberateness of choice under the decisions of the United States supreme court. This concept that a confession to be admissible in evidence must be the voluntary product of a free and unconstrained will was followed in *Pulaski v. State* (1964), 24 Wis. (2d) 450, 129 N. W. (2d) 204, and *State v. Brown* (1964), 25 Wis. (2d) 413, 130 N. W. (2d) 760. Although the rule of voluntariness is easy to state, the determination of what is a voluntary confession in a given fact situation may be difficult. In evaluating the facts for such purpose, the principle adopted by the United States supreme court is to consider the 'totality

of the circumstances'—all the facts surrounding the making of the confession. *Fikes v. Alabama* (1957), 352 U. S. 191, 77 Sup. Ct. 281, 1 L. Ed. (2d) 246."

The individual factors affecting voluntariness and contributing to the totality of the circumstances include denial of rights, questioning, threats, status of accused, nature of coercion, second confession, special techniques and previous experience with police. Defender Newsletter, Vol. II, No. 5, Sept. 1965. The process of determining voluntariness is one of weighing the circumstances of the police pressure against the power of resistance of the person confessing. What is overpowering to a weak mind or a first offender may be ineffectual against an experienced criminal. *Stein v. New York* (1953), 346 U. S. 156, 185, 73 Sup. Ct. 1077, 97 L. Ed. 1522.

The defendant's claim is based upon two items of evidence; first, that the detectives just prior to the oral confession confronted the defendant with a package of cigarettes and told him the package had fingerprints on it which could be analyzed and second, in order to get the written confession, that the detective threatened to take his girl friend into custody on a charge she and the defendant were living together. The defendant admits he knew he was entitled to counsel and the police advised him of his constitutional right to remain silent. He was not subjected to any threats of physical abuse and was not promised any favors for confessing. There is some conflict in the testimony over whether the defendant was given any food. The defendant claims he was not given any but allowed to drink water and smoke cigarettes. A detective testified the defendant was given a sandwich and a cup of coffee. We think this factor is of no great significance under the circumstances. Under defendant's version there was no disregard by the police of a basic need for nourishment which if unsatisfied contributed to coercion. The interrogation lasted at the most three and a half hours and was not vigorous or

pressing. The defendant was not questioned relentlessly or by relays of interrogators.

The factors of psychological pressure, other than the package of cigarettes and the girl-friend incident, were the usual "known hostile forces" found in police-station interrogations which are best described in *Culombe v. Connecticut* (1961), 367 U. S. 568, 575, 81 Sup. Ct. 1860, 6 L. Ed. (2d) 1037, as: "In the police station a prisoner is surrounded by known hostile forces. He is disorientated from the world he knows and in which he finds support. He is subject to coercing impingements, undermining even if not obvious pressures of every variety." The defendant who had been convicted twice before, once for robbery and once for shoplifting, was a man of twenty-two years of age. The record does not show the extent of his education, but it does indicate he understood his constitutional rights. The statements of the police respecting the fingerprints on the package of cigarettes while accusatorial in nature did not constitute such a threat as to control and coerce the mind of the defendant and render the confession involuntary. One must distinguish between motivation and a compelling overpowering mental force. The line of demarcation between coercion and voluntariness is hard to draw and perhaps only a sense of fairness and justice rather than a philosophical approach can find it in the "totality of the circumstances."

We think the statement in reference to the girl friend was motivation more than coercion because the defendant in his testimony stated he considered it was a threat more to her than to him. This threat is dangerously close to the threats disapproved in *Lynumn v. Illinois* (1963), 372 U. S. 528, 83 Sup. Ct. 917, 9 L. Ed. (2d) 922 (she would be disentitled to public assistance (ADC) and would lose custody of her child); in *Rogers v. Richmond* (1961), 365 U. S. 534, 81 Sup. Ct. 735, 5 L. Ed. (2d) 760 (to take accused's wife into custody); and in *Haynes v. Washington* (1963), 373 U. S. 503, 83 Sup. Ct. 1336, 10 L. Ed. (2d) 513 (refusal to allow suspect to call his

wife). But we consider the threat standing in context with the other facts insufficient to render the confession coerced.

It is argued the trial court erred in submitting the question of voluntariness of the confession to the jury. At the time of the trial, *Jackson v. Denno* (1964), 378 U. S. 368, 84 Sup. Ct. 1774, 12 L. Ed. (2d) 908, 1 A. L. R. (3d) 1205, had just been decided but this court had not decided *State ex rel. Goodchild v. Burke, supra,* wherein we adopted the orthodox rule for the procedural determination of the voluntariness of the confession required by the Fourteenth amendment. In *Jackson* the court approved two rules, the orthodox where a separate hearing on the issue of voluntariness is held before the trial judge alone out of the presence of the jury and the court's determination is final, and the Massachusetts rule under which the court makes an initial determination of voluntariness and if the confession is found voluntary the question is again submitted to the jury. The trial court followed the Massachusetts rule not knowing which procedure this court would adopt. Any error in submitting the question of voluntariness to the jury under the Massachusetts rule was not prejudicial since the court had found the confession to be voluntary. We think the defendant's contention concerning the verbalizing and interweaving the separate issues of voluntariness and trustworthiness in the instructions is not well taken because no objections were made at the trial.

The defendant contends his constitutional rights were violated because he was not promptly brought before a magistrate after his arrest and for this reason his confessions should have been excluded. Reliance is placed upon the *McNabb-Mallory* rule which defendant argues should now be applied as a constitutional requirement in state criminal prosecutions. The *McNabb-Mallory* rule is basically an exclusionary rule not based upon any constitutional right of the accused or involuntariness of the confession. The rule was first enunciated in *McNabb*

*v. United States* (1943), 318 U. S. 332, 63 Sup. Ct. 608, 87 L. Ed. 819, and provided for the exclusion of a confession although voluntary which is made during an illegal detention due to the failure promptly to bring the prisoner before a committing magistrate. The rule rests upon the supreme court's superintending authority over the administration of federal criminal justice and in terms of "without unnecessary delay" was adopted as Rule 5 (a) of the federal criminal rules of procedure. In *Mallory v. United States* (1957), 354 U. S. 449, 77 Sup. Ct. 1356, 1 L. Ed. (2d) 1479, *McNabb* was reaffirmed and applied as a federal criminal-procedure rule.

In 1959 we held the *McNabb* rule was not binding upon the state by virtue of the due-process clause of the Fourteenth amendment. *State v. Bronston* (1959), 7 Wis. (2d) 627, 97 N. W. (2d) 504, 98 N. W. (2d) 468. Later it was pointed out in *Culombe v. Connecticut* (1961), 367 U. S. 568, 591, 81 Sup. Ct. 1860, 6 L. Ed. (2d) 1037, that the rule was not made obligatory upon the states as a requirement of the Fourteenth amendment which did "not prohibit a state from such detention and examination of a suspect as, under all the circumstances, is found not to be coercive." The court further stated it was impossible in enforcing the Fourteenth amendment to attempt precisely to delimit or to surround with specific or all-exclusive restrictions the power of interrogation allowed to state enforcement officers in obtaining confessions. It was pointed out no single litmus-paper test for constitutionally impermissible interrogation had been evolved and this included extensive cross-questioning, undue delay in arraignment, failure to caution a prisoner of his rights and refusal to permit communication with friends and legal counsel.

But it is argued that constitutional concepts are continually changing and the tendency of the law is now to impose constitutional rights guaranteed by the Bill of Rights upon the states through the operation of the

Fourteenth amendment. Reliance by way of illustration is placed upon *Mapp v. Ohio* (1961), 367 U. S. 643, 81 Sup. Ct. 1684, 6 L. Ed. (2d) 1081, and *Ker v. California* (1963), 374 U. S. 23, 83 Sup. Ct. 1623, 10 L. Ed. (2d) 726 (the Fourth amendment protecting against unreasonable search and seizure); *Malloy v. Hogan* (1964), 378 U. S. 1, 84 Sup. Ct. 1489, 12 L. Ed. (2d) 653 (the Fifth amendment, protection from compulsory self-incrimination—see case for other examples); *Pointer v. Texas* (1965), 380 U. S. 400, 85 Sup. Ct. 1065, 13 L. Ed. (2d) 923 (the Sixth amendment, right of an accused to confront witnesses); *Gideon v. Wainwright* (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. (2d) 799 (the Sixth amendment, right to aid of counsel).

Because the *McNabb* rule has no roots in the Bill of Rights it cannot be "incorporated" or "absorbed" in the due-process clause of the Fourteenth amendment. If a voluntary confession is to be inadmissible in evidence because it was made while under police detention it must be upon the ground that the length of detention was a deprivation of the person's liberty without due process of law. We are not here considering the length of detention as a factor of coercion which would render the confession or statements involuntary. For such purpose the view is general that if the detention is for a proper purpose and the interrogation is expeditiously carried out, the detention is not unreasonable in length or coercive. *State v. Fransisco* (1950), 257 Wis. 247, 43 N. W. (2d) 38; *Kiefer v. State* (1950), 258 Wis. 47, 44 N. W. (2d) 537; *State v. Babich* (1951), 258 Wis. 290, 45 N. W. (2d) 660.

When the question of the unreasonableness of detention has been raised in suits to recover for false imprisonment, this court has held it is the duty of the arresting officer to take the person arrested before a magistrate without unreasonable delay. *Schoette v. Drake* (1909), 139 Wis. 18, 120 N. W. 393. The Restatement, 1 Torts,

p. 315, sec. 136, states it is misconduct "If the actor, having obtained the custody of another by a privileged arrest . . . (c) fails to use due diligence to take the other promptly before a proper court . . . ." In *Geldon v. Finnegan* (1934), 213 Wis. 539, 252 N. W. 369, in disapproving instructions that without unreasonable delay meant instantly or as soon as it was practicable and usually meant not longer than twenty-four hours after the arrest, this court said "forthwith" like "reasonable time" was a relative term deriving meaning from the circumstances; but if the person was being detained for the purpose of arrest it was the duty of the police to take him before an examining magistrate as soon as the nature of the circumstances would reasonably permit. And, in *Peloquin v. Hibner* (1939), 231 Wis. 77, 285 N. W. 380, another false-imprisonment case, this court held the detention of a suspect, arrested without a warrant, from Sunday night to Tuesday morning was not unreasonable because the police were investigating with due diligence and were entitled to the time to determine whether to make a formal complaint against the plaintiff or release her from custody.

While the *McNabb-Mallory* rule makes it improper to delay a suspect "in order to carry out a process of inquiry which lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt," the due-process clause does not foreclose completely the police from interrogating the person after arrest and before taking him before a magistrate. But, the right to interrogate after arrest is limited and must be for the purpose of determining whether to release the suspect or if he has been arrested without a warrant to make a formal complaint. An arrest upon warrant would seem to presuppose sufficient evidence and its purpose is to cause the arrested person to be brought before a magistrate, sec. 954.04, Stats., so that the criminal process of determining guilt or innocence can commence. A detention for a period longer

than is reasonably necessary for such limited purpose violates due process and renders inadmissible any confession obtained during the unreasonable period of the detention.

In many cases of interrogation the person is arrested either upon a warrant or without one upon probable cause. One may not be arrested upon suspicion and, of course, there is also a degree of difference between probable cause for arrest and probable cause to detain on a bind over. While probable cause to arrest may in this state rest upon information and belief, sec. 954.02, Stats., we must point out as the United States supreme court did, "It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on 'probable cause.'" *Mallory v. United States, supra* (p. 456). While one may be detained by the police and interrogated to secure sufficient evidence to either charge him with a crime or to release him, the police cannot continue to detain an arrested person to "sew up" the case by obtaining or extracting a confession or culpable statements to support the arrest or the guilt. See on this problem of unreasonable detention, Note, 1960 Wisconsin Law Review, 164.

The usual investigatory methods of the police lend themselves to the search for a confession and we point out again as we did in *Pulaski v. State* (1964), 23 Wis. (2d) 138, 126 N. W. (2d) 625, that long detentions are looked upon with disfavor by this court and seriously impair the voluntariness of the confession from the standpoint of psychological aspect of the usual police-station hazards. We find no justification in holding a person under investigation incommunicado no matter for what length of time. Such device smacks of the star chamber and is an indication in itself of overbearing on the part of the police. Delaying of a request of an accused to talk to his family or friends or his attorney should

be considered strong evidence of overbearing pressure to obtain a confession or inculpatory statements. See sec. 946.75, Stats., making it a crime to deny one in custody the right to consult his attorney.

In the instant case the defendant was arrested just before noon and was questioned in the afternoon for about three and a half hours. We do not think this length of questioning or detention was so unreasonable as to violate the due-process clause of our constitution. Sec. 8, art. I, Wisconsin constitution, provides that no person shall be held to answer for a criminal offense without due process of law. Such length of detention does not violate fundamental fairness or fair play in the criminal process under our accusatorial system. In this respect the instant facts are not unlike those in *State v. Bronston* (1959), 7 Wis. (2d) 627, 97 N. W. (2d) 504, 98 N. W. (2d) 468, where we held on a similar argument the delay did not violate the accused's constitutional rights.

The record discloses no reason for holding the defendant from 4:45 in the afternoon after he made his confession until the next day before taking him before the county court. Detention should not be at the pleasure or convenience of the police. If one of the branches of the county court were open, the defendant should have been taken before the judge so that he would have had an opportunity to be let out on bail pending a preliminary hearing, thus avoiding being jailed overnight.

On the record before us we must conclude the conviction should be affirmed.

*By the Court.*—Judgment affirmed.