STATE, Respondent, v. CARTER, Appellant.

*November 4—November 29, 1966.*

For the appellant there was a brief and oral argument by *Louis W. Staudenmaier, Jr.,* of Milwaukee.

For the respondent the cause was argued by *Robert E. Sutton,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

BEILFUSS, J. Three issues are presented upon this appeal:

1. Should the trial judge have, upon motion by the defendant, disqualified himself from conducting the hearing on remand to determine the admissibility of the defendant's confession?

2. Should this court make an independent, *de novo,* determination of the voluntariness of the defendant's confession on review of the findings of the trial court after hearing?

3. Was the defendant's confession properly admitted into evidence against him at trial?

The defendant contends that certain remarks made by the trial judge after verdict and before sentencing indicate such prejudice toward the defendant that the trial judge should have granted defendant's motion to

disqualify himself from conducting the hearing. The remarks which the defendant contends manifest prejudice appear in the record as follows:

"The Court: The verdict of the jury is accepted and received by the Court and ordered filed and recorded.

"Ladies and gentlemen of the jury, that completes your service in this case and you are discharged in this case.

"The verdict of the jury meets with my full approbation so far as my reaction to the testimony is concerned and the credibility of witnesses, . . .

". . .

"The Court: What was the nature of the violation of the probation that I gave you, Carter. Was that another narcotics matter?

"A. Yes, sir.

"Q. Are you a heroin user? A. Yes, sir.

"Q. Were you using it at the time that you were involved in this offense? A. Yes, sir.

"Q. By injection? A. Yes, sir.

"Q. Is that why you committed the robbery? A. Yes, sir.

"The Court: You see, your trouble is your truth comes very tardily.

". . .

"The Court: By his tardiness in recanting of perjury and inducing others to similarly concoct a very patent fabrication in the nature of an alibi, he has just saved himself a consecutive sentence.

"Carter, I gave you a chance some years ago and you missed it. This heroin situation is not good. I must have told you that at the time.

"Defendant: Yes, sir.

"The Court: And that apparently was your motivation here. You should have pleaded guilty, in my view. I think the evidence was very clear. You tried hard to escape twice. This time you have not escaped, thanks to the common sense and the perspicacity of the jury, and I know that they took this matter seriously.

"I submitted to them, properly, under the applicable facts and the law, the choice of another verdict besides not guilty. This business about a plastic gun, well, they didn't buy that and I am pleased that they had the vision

to penetrate that kind of claim. Of course, that wasn't your claim, really, because you disavowed the confession, you claim it was made under duress and it wasn't true and you weren't there. That was an easy matter to see through.

"I don't think a man like you would use a plastic pistol and I doubt very much whether, being on the hunt for narcotics, whether you would equip yourself with this kind of an innocuous weapon. That was my reaction and the jury felt the same way, not knowing about the narcotics history, and I didn't either, until I saw this record here. . . .

". . .

". . . And I intend, of course, to impose here the very maximum sentence, because you not only have compounded the two attempted escapes, which were serious enough, but you have also compounded the felony which you committed, which was very serious, by the position you took on this trial, until this very last anti-climatic moment, when you, by what you told me, acknowledged that you committed this robbery. You should have done that a long time ago."

The remarks of Judge STEFFES set forth above are taken out of the context of the record and were spoken to Carter in connection with the imposition of sentence.

At the trial Carter used two alternative and inconsistent theories of defense: (1) An alibi to the effect he was not present at the robbery, and (2) that the pistol used at the robbery was only a plastic imitation of a gun.

The record clearly demonstrates a dismal failure of these two defenses and justifies the comment of the trial judge at the time of sentencing. The alibi witness offered by the defendant did not in any adequate sense establish that Carter was not at the scene at the time of the robbery. The victim of the robbery unequivocally identified Carter as his assailant and the weapon as a gun. Carter struck the victim on the head twice with the gun with sufficient severity so that the victim re-

quired emergency hospital treatment to suture his scalp wounds.

Carter's past criminal record presented to Judge STEFFES after the return of the verdict revealed Carter had a history of use and attempted sale of narcotics dating back to 1957. Thus the record of the trial and the information furnished to the court in aid of sentencing amply demonstrate that the trial judge's remarks were based upon judicially acquired knowledge and were justified in explaining to Carter the basis for the sentence.[2]

The stipulation and order remanding the matter to the court for hearing provided that it be sent back to the circuit court for Milwaukee county. While the circuit court for Milwaukee county has several branches, the import of both the stipulation and the order is that it should be returned to the trial court that originally heard the case.

Because *Jackson v. Denno, supra,* is a very recent pronouncement of the United States supreme court (June 22, 1964), there is little authority on the question of which judge shall hear and conduct the supplemental hearing on the question of the voluntariness of a confession.

In *People v. Huntley* (1965), 15 N. Y. (2d) 72, 204 N. E. (2d) 179, the Court of Appeals of New York held that, where possible, the supplemental hearing after trial required by *Jackson v. Denno, supra,* should be held before the judge who presided over the trial.[3]

While we do not hold that in no instance should the original trial judge refuse to disqualify himself as a matter of proper judicial discretion, we are of the opinion that unless it can be clearly shown that the trial

[2] For the propriety of considering a plea of not guilty in the imposition of sentence, see *Jung v. State* (1966), 32 Wis. (2d) 541, 145 N. W. (2d) 684.

[3] Also see *People v. Thigpen* (1966), 33 Ill. (2d) 595, 213 N. E. (2d) 534.

court has demonstrated a prejudice toward the defendant the original trial judge should, where possible, conduct the supplemental proceeding to determine the voluntariness of a confession. We wish to point out that judicial knowledge, properly acquired, concerning the defendant cannot be the basis of disqualification.

In accord with this view we find the following in *United States v. Brooks* (7th Cir. 1965), 355 Fed. (2d) 540, 542:

". . . This is a common function in the work of trial judges, and the absence of a rule requiring one judge to hear the testimony on voluntariness of a confession and another to determine guilt indicates satisfaction with the present practice. To hold otherwise would work an undue and unwarranted burden on district courts, especially in a case like this, where the issue of voluntariness does not arise until after the trial has commenced and defendant has waived a jury trial. Our jurisprudence postulates the ability of judges to dismiss from their minds, in reaching decisions, offers of evidence excluded by rulings after hearing arguments on admissibility of that evidence."

We are of the opinion that it was not error for the trial judge, Judge STEFFES, to conduct the supplemental evidentiary hearing to determine the voluntariness of Carter's confession.

The only question at the hearing was that of the voluntariness of the defendant's confession under the "totality of the circumstances" test. Thus the state had the burden to prove beyond a reasonable doubt that the confession was a result of deliberateness of choice and that it was the product of a free and unconstrained will. *Neuenfeldt v. State* (1965), 29 Wis. (2d) 20, 138 N. W. (2d) 252. In the case at bar the trial judge applied these standards, made detailed findings of fact and conclusions of law in accord with *State ex rel. Goodchild v. Burke, supra,* and concluded that Carter's confession was voluntary.

The defendant argues that because a constitutional right is involved, this court should make an independent, *de novo* determination on the question of voluntariness. In support of this proposition the defendant relies upon the following statement in *Phillips v. State* (1966), 29 Wis. (2d) 521, 527, 139 N. W. (2d) 41:

"But since the question is whether a constitutional right has been violated, it is the subject of our independent determination on this review."

A closer examination of *Phillips* reveals that the quotation relied upon by Carter was made with reference to a mixed question of fact and constitutional law which was passed upon by the trial court at a hearing on the admissibility of the confession.

We further stated in *Phillips:*

"There is dispute in the evidence, however, whether the defendant was advised he could have counsel. At the conclusion of the testimony, the trial judge found the confession was a free and deliberate choice of the defendant, but more important on this issue, that under the circumstances the confession was 'constitutionally antiseptic and not in violation of any of his constitutional rights.' Thus while the trial court did not make a specific finding that a request was not made, it did make an ultimate fact-finding which we think under the circumstances negated the making of the request for counsel. From the record it is apparent such effect was understood by the defendant. The determination of the question of voluntariness turns primarily on credibility, and on this record we are inclined to agree with the finding of the trial court. We suggest, however, that for the aid of this court in its determination of a constitutional question and to avoid a possible hearing on collateral attack, that trial courts make specific and complete findings of the facts underlying a constitutional question. *State ex rel. Goodchild v. Burke* (1965), 27 Wis. (2d) 244, 133 N. W. (2d) 753."

While this court unquestionably has the power to review the evidentiary facts *de novo* where constitutional

principles are involved, it does not follow that we must do so, especially when it appears adequate procedures have been adopted by the trial court.

It was our purpose in both the *Goodchild* and *Phillips Cases* to direct that the trial court make detailed findings of the important evidentiary facts of the circumstances surrounding the confession for two reasons: (1) So that we have a reliable determination of the disputed facts, and (2) so that we have a definite enumeration of the facts disputed or undisputed for our review of the totality of the circumstances judged by constitutional standards.[4]

Some of the evidentiary or historical physical facts are often disputed as they are here. Questions of the defendant's age, education, time of arrest, length of detention, prior criminal court experience and others are usually not disputed. But questions of advice as to constitutional rights, physical or psychological abuse, threats, promises, and others are often sharply disputed. A determination of these important evidentiary facts is usually a matter depending upon the credibility of the witnesses and the weight of the testimony. In the matter of deciding the credibility of the witnesses and the weight of the testimony, in these, as in all factual disputes, the trial court from his vantage point in the courtroom is in a much more advantageous position to make the determination than this court is from a review of the record, briefs, and arguments.

Where the court has made detailed findings of facts as was done here, our review of the evidentiary or historical physical facts will be limited to the same review that is used in other factual disputes heard and determined by a trial judge. The findings of the trial

---

[4] In Mr. Justice WILKIE'S concurring opinion in *State v. Hoyt* (1964), 21 Wis. (2d) 284, 305, 128 N. W. (2d) 645, the facts are denominated historical physical facts surrounding the interrogation, and constitutional facts.

court will not be upset unless they are against the great weight and clear preponderance of the evidence.

We deem this position to be completely consistent with *Jackson v. Denno, supra,* at pages 390, 391, wherein it was stated:

"Expanded concepts of fairness in obtaining confessions have been accompanied by a correspondingly greater complexity in determining whether an accused's will has been overborne—facts are frequently disputed, questions of credibility are often crucial, and inferences to be drawn from established facts are often determinative. The overall determination of the voluntariness of a confession has thus become an exceedingly sensitive task, one that requires facing the issue squarely, in illuminating isolation and unbeclouded by other issues and the effect of extraneous but prejudicial evidence. [Cases cited.] Where pure factual considerations are an important ingredient, which is true in the usual case, appellate review in this Court is, as a practical matter, an inadequate substitute for a full and reliable determination of the voluntariness issue in the trial court and the trial court's determination, *pro tanto,* takes on an increasing finality. The procedures used in the trial court to arrive at its conclusions on the coercion issue progressively take on added significance as the actual measure of the protection afforded a defendant under the Due Process Clause of the Fourteenth Amendment against the use of involuntary confessions. These procedures must, therefore, be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend. . . ."

The facts leading up to the defendant's confession may be briefly stated as follows: On January 30, 1962, the defendant purchased a bottle of elixir terpin hydrate with codeine from druggist John Gates at his drugstore in the city of Milwaukee. The defendant signed his correct name and address in the druggist's register as required by federal law. As he was leaving the store

the defendant paused and then purchased a bottle of Coca Cola, a beverage that, according to the druggist's testimony, drug addicts often mix with codeine products. The next day, February 1, 1962, the defendant robbed Gates at gunpoint, taking some narcotics and $104 in cash. The defendant struck Gates twice in the back of the head with his pistol, causing a scalp wound that required sutures to close. After Gates returned from the hospital the same day, he swore out a criminal complaint against the defendant. A warrant was issued and the defendant was arrested the same evening by Milwaukee Police Officers Koehler and Golembiewski. After being handcuffed, the defendant escaped from the officers and fled the state of Wisconsin.

Four months later, on June 14, 1962, the defendant was arrested in Nashville, Tennessee, on a federal warrant charging him with unlawfully fleeing Wisconsin to avoid prosecution. He was held in the Nashville jail without questioning while Milwaukee authorities were notified. On June 21, 1962, custody of the defendant was turned over to Milwaukee Police Officers Russ and Jones, who took the defendant by airplane to O'Hare Field on their way back to Milwaukee. At the O'Hare terminal the defendant escaped custody for twenty minutes, during which time a chase and great disturbance ensued. Officer Russ injured his hand and leg in reapprehending Carter. Because the airline officials then refused passage for the three, they had to finish their trip to Milwaukee via Chicago police wagon and the North Shore line. They arrived in Milwaukee about 10:15 p. m., whereupon the defendant was fingerprinted and held in the Milwaukee county jail overnight.

About 8 a. m. on Friday, June 22, 1962, the defendant was taken from his jail cell. The defendant was brought to a small room and interrogated by Russ, Golembiewski and Koehler from about 8:30 a. m. until shortly before 10 a. m. At 9:55 a. m., the defendant wrote out and

signed the confession, which was witnessed by two officers at 10 a. m. and by one officer at 10:01 a. m. Thereupon the defendant was immediately brought before a magistrate for his initial appearance. It is undisputed the only time that the defendant was questioned was during this one and one-half hour period on June 22, 1962. The confession given during this period is what defendant claims was given involuntarily.

Upon remand Judge STEFFES held four days of hearings, during which Officers Koehler, Russ and Jones testified. In general their testimony was that no threats or force had been used on the defendant other than that necessary to keep him in custody and that the defendant gave his confession freely and without threat or force after being informed of his constitutional rights. The defendant's testimony conflicted with that of the officers; he stated that he was threatened and physically abused before he made his confession. Carter testified that Russ severely beat him after the return to Milwaukee. The testimony conclusively reveals that at the time Carter claims Russ beat him, Russ was in the hospital getting treatment for the injuries he received in Chicago. The defendant also offered the testimony of four men who had been in the Milwaukee jail when he was brought in; in general they testified that the defendant was bruised when he was brought in. The trial judge made detailed findings of fact and conclusions of law, most pertinent of which are the following:

"17. That the period of interrogation of the defendant by Detectives Russ, Golembiewski and Koehler on June 22, 1962, during which time he made oral admissions and finally a written confession, which he signed at 9:55 A. M. (State's Exhibit #1), covered a period of approximately one and one-half hours, commencing at about 8:30 A. M., and that such questioning was neither protracted nor overbearing, and that the time consumed therein was not unreasonable, and that except for such approximately one and one-half hour period during which

94

interrogation occurred, the defendant was not earlier questioned concerning the charged offense; and that reasonably shortly after his execution of State's Exhibit #1 and, at the very latest, shortly before noon, the defendant was taken before a Magistrate.

"18. That at any and all of the times and places hereinbefore mentioned, before or during the making of any statements against his interest, oral or written, by the defendant, including State's Exhibit #1, no physical force of any kind whatsoever was used upon said defendant, except such as was clearly reasonably necessary to effectuate his original arrest and his subsequent re-arrest and taking into custody and his re-apprehension after escape at O'Hare Field and to retain his custody subsequent to such re-apprehension after his last escape, by any law-enforcement officer or employe of any law-enforcement agency, including any member of the Milwaukee Police Department.

"19. That at any and all of the times and places hereinbefore mentioned, up to and including the making of any statements against his interest, either oral or written, by the defendant, including State's Exhibit #1, no officer or employe of any law-enforcement agency, including any member of the Milwaukee Police Department, made any threats against said defendant.

"20. That at any and all of the times and places hereinbefore mentioned, up to and including the making of any statements against his interest, either oral or written, by the defendant, including State's Exhibit #1, no officer or employe of any law-enforcement agency, including any member of the Milwaukee Police Department, made any promises to said defendant to induce the making of any said statements or for any other purpose.

"21. That at any and all of the times and places hereinbefore mentioned, up to and including the making of any statements against his interest, either oral or written, by the defendant, including State's Exhibit #1, the defendant made no requests to see or call a lawyer or a doctor, nor made any complaints concerning his treatment by those having him in custody, except his request to have his handcuffs loosened on the North Shore train, with which request Detective Jones complied; nor did he make any such requests or complaints

when he appeared before the Magistrate on June 22, 1962.

"22. That at all of the times hereinbefore mentioned the defendant well knew his Constitutional rights, including specifically that he had the Constitutional right to remain silent, not to make any statements which might incriminate him, and that if he did so, they could be used against him, and of his right to counsel.

"23. That the totality of the factual circumstances preceding and including his making of any statements to law-enforcement officers, including State's Exhibit #1, and extending back to the time of his original arrest on February 1, 1962, is completely devoid of any physical or psychological pressures, including threats, promises or physical abuse aimed at or which resulted in his making any such statements, and indicate clearly that such statements were obtained under such factual circumstances that they were the free and voluntary utterances of the defendant and that they were his free and deliberate choice.

"Therefore, as Conclusions of Law, the Court states as follows:

"That any and all of the defendant's statements made to and in the presence of Officers of the Milwaukee Police Department on June 22, 1962, including State's Exhibit #1, were free and voluntary, Constitutionally antiseptic, were and are legally admissible under Constitutional standards, both Federal and State, including the application of the Fourteenth Amendment, and that their reception into evidence upon the trial was and is legal under such standards."

The findings and conclusions make it clear that the trial judge correctly applied the "totality of the circumstances" test on the question of the voluntariness of the confession. There is ample testimony in the record to support the findings beyond a reasonable doubt. The defendant's real lament is that the judge did not believe his testimony and that of his witnesses. But as we have seen, in *Phillips* and in *Jackson v. Denno,* the courts recognized the importance of having the trial judge decide questions of credibility. 29 Wis. (2d) at page

528; 378 U. S. at pages 390, 391. In this case the findings are not against the great weight and clear preponderance of the evidence.

In our review of the constitutional facts we agree with the trial court that from the totality of the circumstances the confession was a product of the free and unconstrained will of the defendant, that it was voluntarily given and testimonially trustworthy under the test that prevailed at the time of trial.[5]

The defendant further contends that the confession was not admissible because it was taken after the warrant was served during a detention for an unreasonable length of time, and that it was taken only for the purpose of "sewing up" the case and, therefore, inadmissible as a matter of law under *Reimers v. State* (1966), 31 Wis. (2d) 457, 143 N. W. (2d) 525; *State ex rel. Van Ermen v. Burke* (1966), 30 Wis. (2d) 324, 140 N. W. (2d) 737; and *Phillips v. State, supra.*

The defendant was tried in February of 1963. He was not entitled to a retrospective application of the rights enunciated by the United States supreme court in *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. (2d) 977, or in *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. (2d) 694. In *Johnson v. New Jersey* (1966), 384 U. S. 719, 86 Sup. Ct. 1772, 16 L. Ed. (2d) 882, the court held that *Escobedo* and *Miranda* do not apply to cases whose trials began before the dates those decisions were announced. In *Reimers v. State, supra,* this court recognized that neither *Escobedo* nor *Miranda* are retrospective in their application in Wisconsin.

The defendant contends that the rule of *Phillips v. State, supra,* should be made retroactive to make defendant's confession inadmissible. Since the defendant was only detained for interrogation for an hour and a half, on its face the defendant's detention was not for

---

[5] See *State v. Hoyt, supra.*

an unreasonable length of time under *Reimers* (three hours) and *Phillips* (five hours).

Since he was arrested on a warrant, the defendant contends that the only purpose for questioning him was to obtain a "sew-up" confession forbidden by *Phillips v. State, supra,* at page 535. In *State ex rel. Van Ermen v. Burke, supra,* at page 338, this court did not accord, in a collateral attack proceeding, retrospective effect to the holding in *Phillips* that a voluntary confession obtained during an unreasonable period of detention is inadmissible in evidence. The court is now asked to accord such retrospective effect to *Phillips* in a case coming before this court on appeal.

In *State ex rel. La Follette v. Raskin* (1966), 30 Wis. (2d) 39, 139 N. W. (2d) 667, we considered at great length the principles and guidelines with respect to whether a decision concerning rules of federal constitutional law should be given retrospective application.

*La Follette v. Raskin, supra,* provides that retrospective application is inadvisable where its only effect would be to strike down a police procedure acceptable at the time of trial, which police procedure did not work to undermine a fair trial. In this case the confession was not coerced and the time of detention was not on its face unreasonable. At that time "sew-up" confessions were accepted police practice. The record discloses no reason why this case, tried in 1963 and finally brought before this court on appeal, in any material way differs from *Van Ermen,* which was tried in 1961 and collaterally attacked in 1965. Retrospective application of *Phillips* is equally inadvisable under the principles of *State ex rel. La Follette v. Raskin, supra.*

The rule of the *Phillips Case* will apply only to those cases in which the trial commenced after the date of the opinion, namely, January 7, 1966.

*By the Court.*—Order affirmed.