MASSEN, Plaintiff in error, v. STATE, Defendant in error.

*Nos. State 54, 55. Argued November 27, 1968.—Decided January 7, 1969.*
(Also reported in 163 N. W. 2d 616.)

246

248

For the plaintiff in error there were briefs and oral argument by *James H. McDermott,* state public defender.

For the defendant in error the cause was argued by *Bruce C. O'Neill,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *David J. Cannon,* district attorney.

BEILFUSS, J.   The defendant does not challenge the fact that the prosecutrix was subjected to a violent attack and attempt to rape her on the night in question.  The details

of this heinous assault need not, therefore, be set forth. At the trial his principal defense was alibi.

Upon this appeal the defendant sets forth a series of claimed errors which he contends entitle him to a dismissal or a new trial. The contentions of the defendant are:

(1) That the warrant is constitutionally defective because not issued by an independent and neutral magistrate and because the underlying complaint does not contain facts establishing probable cause;

(2) that the period of detention before being brought before a magistrate was unreasonable;

(3) that the lineup was conducted without counsel for the defendant and was otherwise unfair;

(4) that the trial court erroneously discredited the alibi testimony of the defendant upon the mistaken belief that defendant had a prior criminal record;

(5) that the prosecutor in cross-examination improperly implied the existence of proof which would place the defendant near the scene at the time of the crime;

(6) that the evidence is insufficient and that defendant should be granted a new trial in the interest of justice.

The complaint was subscribed and sworn to by the prosecutrix before Janet C. Boyle, a deputy clerk of the county court, on the 25th day of November, 1964. Omitting its formal parts, the complaint states:

"J———— K————, being first duly sworn on oath, complains to the County Court of the County of Milwaukee, Misdemeanor Branch, that Donald Richard Massen on the 19th day of November A. D. 1964, in the County of Milwaukee, Wisconsin, did feloniously attempt to commit the crime of Rape, contrary to Section 944.01 of the statutes, by attempting to have sexual intercourse with J———— K————, a female, by force and against her will, the said J———— K———— then and there not being the wife of said Donald Richard Massen, as he then and

there well knew, contrary to Section 939.32 of the statutes, and against the peace and dignity of the State of Wisconsin, and prays that the said Donald Richard Massen may be arrested and dealt with according to law."

Upon this complaint a warrant was issued on November 25, 1964, signed by a deputy clerk of court, Bernice Sullivan. On the same day the warrant was served and defendant appeared before the magistrate. After a preliminary hearing on January 18, 1965, the defendant was bound over to the circuit court for trial.

On February 8, 1965, the defendant appeared in circuit court, was arraigned and entered a plea of not guilty. The defendant reappeared in circuit court on July 6, 1965, and September 29, 1965, and then on December 2, 1965, for the first time, challenged the warrant by a motion to dismiss.

The warrant was not issued by a neutral and detached magistrate as required by *State ex rel. White v. Simpson* (1965), 28 Wis. 2d 590, 137 N. W. 2d 391. It is the defendant's contention that he should be able to make the jurisdictional *White* motion at any time prior to trial. *State v. Greene* (1968), 40 Wis. 2d 88, 161 N. W. 2d 239, citing *State ex rel. La Follette v. Raskin* (1966), 30 Wis. 2d 39, 139 N. W. 2d 667, makes it clear that the motion must be made "at the earliest opportunity that he appears in the trial court." When the defendant pleaded not guilty without objecting to the jurisdiction of the court he waived his objection and invoked the jurisdiction of the trial court. His subsequent appearances on July 6th and September 29th reaffirmed his waiver.

We do not agree with the defendant to the effect that the complaint was defective because it stated a "mere conclusion" and did not allege specific intent. This complaint is not upon information and belief but is made upon the oath of the assaulted person. It does set forth all

of the "essential facts" [1] necessary to constitute the crime charged under secs. 944.01, Stats. (rape), and 939.32 (attempt to commit a felony). We find no merit in defendant's attack on the complaint and warrant.

The defendant complains that his period of detention before being brought before a magistrate was unreasonable.

The defendant was taken into custody by the police about 10:45 p. m. on November 24, 1964. Some time during the next day, November 25th, the warrant was served on the defendant and on the same day (November 25th) he appeared with his attorney before a magistrate. During the interval between being taken into custody and his appearance in court before the magistrate he was placed in a lineup and identified by the prosecutrix as her attacker. No statements, confessions nor admissions were made by defendant during this period of detention.

In *Phillips v. State* (1966), 29 Wis. 2d 521, 535, 139 N. W. 2d 41, this court adopted an exclusionary rule that rendered inadmissible any statement obtained from a defendant during a period of unreasonable detention. [2] In *Phillips* it is further stated (p. 535) : "While one may be detained by the police and interrogated to secure sufficient evidence to either charge him with a crime or to release him, the police cannot continue to detain an arrested person to 'sew up' the case by obtaining or extracting a confession or culpable statements to support the arrest or the guilt."

In this instance no statement was taken. The fact that a defendant appeared in a lineup is not condemned by *Phillips* and may well be consistent with *Phillips*. If the prosecutrix had not identified the defendant in the lineup

[1] *See State ex rel. Evanow v. Seraphim* (1968), 40 Wis. 2d 223, 161 N. W. 2d 369.

[2] *See McNabb v. United States* (1943), 318 U. S. 332, 63 Sup. Ct. 608, 87 L. Ed. 819; *Mallory v. United States* (1957), 354 U. S. 449, 77 Sup. Ct. 1356, 1 L. Ed. 2d 1479.

it is probable he would have been released. The activities of the police were not unreasonable nor unfair. He was arrested late in the evening and brought before the magistrate with his attorney the next day. It is difficult to visualize how he could have been brought before the magistrate much sooner than he was—in any event the period of detention was not unreasonable.[3]

The defendant makes two complaints concerning the lineup: (1) It was without counsel, and (2) it was unfair.

By virtue of the decisions of the United States Supreme Court in *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149, and *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178, defendants in state cases are entitled to counsel at a lineup under the command of the sixth and fourteenth amendments to the United States Constitution. However, in *Stovall v. Denno* (1967), 388 U. S. 293, 87 Sup. Ct. 1967, 18 L. Ed. 2d 1199, announced the same day, it was held that *Wade* and *Gilbert* applied only to cases where the lineup was conducted after June 12, 1967. The lineup here was on November 25, 1964, and without counsel.

In two recent cases, *State v. Clarke* (1967), 36 Wis. 2d 263, 274, 153 N. W. 2d 61, and *State v. Harris* (1968), 40 Wis. 2d 200, 212, 161 N. W. 2d 385, this court has noted *Wade, Gilbert* and *Stovall* and has refused to apply *Wade* or *Gilbert* retroactively. We adhere to that policy.

The defendant contends that the lineup was "unnecessarily suggestive and conducive to irreparable mistaken identification" and "resulted in such unfairness that it infringed his right to due process of law." [4] We disagree.

---

[3] *See Reimers v. State* (1966), 31 Wis. 2d 457, 470, 471, 143 N. W. 2d 525.

[4] *See Stovall v. Denno, supra; Palmer v. Peyton* (4th Cir. 1966), 359 Fed. 2d 199; *Simmons v. United States* (1968), 390 U. S. 377, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247.

On the night of the assault, immediately after the prosecutrix arrived at her home, she called the police. She stated she had never seen her assailant before, that although it was dark there was a streetlight and she could see and that at times his face was five or six inches from hers. She gave the police the following description:

"White male, approximately 40 years old, wearing a black waist length coat. He grabbed her from behind and pulled her into the Electric Company field. Male had a balding spot on top of his head, black trousers, black leather jacket, black fur lined gloves, approximately 5 foot, eight inches, about 140 to 150 pounds, badly in need of a haircut."

The chief of police of St. Francis, Louis Frank, gave this description to operators of several taverns in the area. In response to this description one of the tavern operators called the chief of police the next evening (November 20th). The chief of police saw the defendant in the tavern and observed he had a black jacket and dark trousers and was badly in need of a haircut. The record reveals that he was thirty-eight years old.

On November 20th the prosecutrix was taken to the Safety Building in Milwaukee to look at pictures for a suspect. She testified she looked at "cabinets full" that seemed like "millions" and none of the pictures shown to her was the man who assaulted her. The next day she was shown three additional photographs, including the defendant. On November 25th, at the lineup, the defendant and two dark-haired men (the defendant had light or sandy colored hair) were shown to the prosecutrix. She immediately identified the defendant as her assailant.

In *Wade, supra,* it is stated:

". . . Suggestion can be created intentionally or unintentionally in many subtle ways. And the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest. . . .

". . . the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." (pp. 229, 241.)

We find nothing unnecessarily suggestive or conducive to mistaken identification. The prosecutrix had ample opportunity to observe her assailant; the description she gave the police immediately after the attack was strikingly similar to that of the defendant; although she saw a great many pictures she did not identify anyone other than the defendant and identified him without hesitation when she saw him. There is no evidence that the police in any manner unnecessarily or unfairly suggested the identification of the defendant. The lineup was fairly conducted and her in-courtroom identification was sufficient to base a finding that the defendant was the assailant.

The identification of the defendant by the prosecutrix was remarkably accurate, complete, positive and unequivocal. It was amply sufficient to permit the trier of fact to find that the defendant was the person who committed the offense.

The defendant attempted to raise reasonable doubt as to his participation in the act by an alibi. If an alibi is established to the satisfaction of the trier of the fact, it, of course, raises a reasonable doubt and entitles the defendant to an acquittal. However, an alibi, the claim that the defendant was at a different place when the crime was committed, is easily conceived by a prevaricator and can be pure fabrication designed to avoid the consequences of guilt. When a plausible alibi is presented it casts upon the trier of fact the solemn duty of determining the credibility of the witness and the weight to be given the testimony in resolving the disputed fact in a judicious attempt to find the truth. We are confident

that the distinguished trial judge fully understood these principles and conscientiously applied them.

Three of the alibi witnesses did not see the defendant after nine p. m. or 9:30 at the latest, which left ample time for the defendant to be at the scene at the time of the offense. Although their testimony may well be credible it was entitled to little or no weight to prove the defendant was not at the scene at the time of the offense.

The testimony of the fourth witness, the eight-year-old child, was justifiably rejected by the trial court upon its belief the witness had been coached.

As to the testimony of Mrs. Davis, the trial judge rejected it as being false, as he had a right to do in his evaluation of its credibility.

The defendant contends that the trial court erroneously discredited his alibi testimony upon the mistaken belief that the defendant had a prior criminal record.

In announcing the finding of guilt, the trial judge stated:

"His [defendant's] credibility is impaired, in my view, not only by his prior convictions but also by my personal observation and my personal reaction to his claims, including his total testimony and including the total testimony of all the witnesses."

Chief of Police Frank testified that on November 20, 1964, the defendant told him that "the only thing that he had ever had was a traffic violation on which he had served thirty days under the Huber Act." The defendant, on cross-examination, testified that he had been "more or less arrested for tickets that weren't paid" but that "I have never yet been arrested for no major crime."

The record does not reveal whether the traffic offenses were misdemeanors or ordinance violations. Ordinance violations may not be used to impeach the credibility of a witness under sec. 885.19, Stats., and *Koch v. State*

(1906), 126 Wis. 470, 106 N. W. 531. The proof is insufficient to show the defendant had prior criminal convictions and could not be used to impeach him.

Aside from the fact that the impeachment was based on additional and more substantial grounds as is apparent from the statement of the trial judge quoted above, at the time of sentencing on March 18, 1966, the record reveals the following comments by the judge and the prosecutor:

"The Court: I intend to recognize the defendant's past history of no serious involvement at all with the law and he has not been convicted of any crimes, I believe I am correct in that.
"Mr. Boyle: Correct."

Counsel for defendant on that occasion also remarked:

"I think that his record shows that he has not been involved in any criminal matters before except for minor traffic offenses."

As we view the record it is apparent that the question of prior criminal offenses had very little influence in the trial court's determination that the defendant's alibi testimony was incredible.

More important, no objection was made to the judge's statement at the time it was made nor was any reference made to the entire alibi question in the postconviction motions for a new trial.[5]

In *Finger v. State* (1968), 40 Wis. 2d 103, 107, 108, 161 N. W. 2d 272, we stated:

"In essence, what the defendant herein is saying is that the judge had to review the sufficiency of the evidence in order to reach his finding and that to ask him to review it again is to require the trial judge to do a useless act.

_____
[5] It should be noted that counsel representing the defendant in this writ of error to review did not represent the defendant either at the trial or at postconviction motions.

Nevertheless, we conclude that a motion for a new trial or to set aside a finding is not a useless act even though the trial is before the court.

"The fact that, in the mind of counsel, a trial judge adopts an erroneous view of the law or makes a faulty appraisal of the evidence in his initial findings does not, ipso facto, mean that he will persist in error, if error there be, when the viewpoint of counsel is called to his attention. There are numerous instances in which judicial errors have been called to the attention of the trial judge on motions after verdict where the judges of this state have not hesitated to correct their own errors. We have frequently taken the position that a trial judge should be given the opportunity to correct his own errors as well as those that may have been committed by a jury. As has been stated in 39 Am. Jur., *New Trial*, p. 43, sec. 17, referring to the practice in other jurisdictions:

" '. . . it was the duty of counsel to give the trial court an opportunity, by motion for a new trial, to correct whatever errors *it* may have made in respect to matters which may properly be made the grounds of such a motion.' (Emphasis supplied.)

"Even in the nonjury case a motion for new trial not only secures a re-examination of the issues of fact but:

" ' ". . . it serves also to bring to the notice of the trial court errors which may have been committed in the course of the trial, and enables the court to correct such errors without subjecting the parties to the expense and inconvenience of prosecuting review proceedings. . . . 39 Am. Jur., New Trial, p. 42, sec. 17." ' *Ferry v. State* (1954), 266 Wis. 508, 63 N. W. 2d 741.

"While we deem it highly desirable that the appropriate motions be made after trial in both jury and nonjury cases, the attorney general has brought to our attention no Wisconsin case requiring such a motion; and, as in *Fringer v. Venema, supra,* while commending the practice of making such a motion, we do not hold that such a motion is mandatory to secure a review of the evidence in a nonjury criminal case, but reserve the question for subsequent opinion or court rule."

In counsel's diligent search for error a phrase of a statement was taken out of context from the remarks of the trial court. Clearly this is the type of error that should be brought to the attention of the trial court by

objection or postconviction motion and should not be raised as a matter of right for the first time upon appeal. Credibility of a witness is dependent upon many variant factors and observations by the trier of fact, not all available upon review; [6] if there is error or mistake the trial court should first be given the opportunity to reconsider it.

The defendant contends that the prosecutor in cross-examination improperly implied the existence of proof which would place the defendant near the scene at the time of the crime by reference to the location of the home of defendant's separated wife, and an inquiry as to whether he had gone there. We have examined the record and find no unfair implication nor error.

The final contentions are that the evidence is insufficient and that the defendant should be granted a new trial in the interest of justice.

The standard of review as to the sufficiency of the evidence to prove guilt beyond a reasonable doubt has been stated as follows:

"The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true.

"The sufficiency test is often stated in terms of burden of proof, but it is not unusual to state the test in terms of quantity of the evidence. See *State ex rel. Isham v. Mullally* (1961), 15 Wis. (2d) 249, 112 N. W. (2d) 701. Stating the rule conversely for the sake of clarity, the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' " *Lock v. State* (1966), 31 Wis.

---

[6] *Heffernan v. Heffernan* (1965), 27 Wis. 2d 307, 314, 134 N. W. 2d 439.

2d 110, 114, 115, 142 N. W. 2d 183. *See also State v. Clarke* (1967), 36 Wis. 2d 263, 272, 153 N. W. 2d 61, 65.

In *Finger v. State, supra,* the court noted the standard of review as follows:

" 'It is only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the appellate court will substitute its judgment for that of the fact finder . . . .' " pages 110, 111, quoting from *Gauthier v. State* (1965), 28 Wis. 2d 412, 415, 137 N. W. 2d 101.

The defendant does not question that the prosecutrix was subjected to attempted rape. The evidence in this record makes it a verity. The defense was that the state did not prove beyond a reasonable doubt that he committed the crime. In support of this contention he argues his identification by the prosecutrix was unfair and inadequate and his alibi erroneously rejected. We have discussed both the identification and the alibi above and reviewed the entire record. The credible evidence in the record is amply sufficient to permit the finding of guilt beyond a reasonable doubt.

This is not a case wherein a new trial should be granted in the interest of justice.

In *State v. Harris, supra,* page 212, quoting from *Lock v. State, supra,* page 118, we stated:

" 'In order for this court to exercise its discretionary power under sec. 251.09, Stats., it should clearly appear from the record that for some reason it is probable there has been a miscarriage of justice. In order for this court to exercise its discretion and for such a probability to exist we would at least have to be convinced that the defendant should not have been found guilty and that justice demands the defendant be given another trial.' "

From the entire record we find no probability that justice has miscarried.

*By the Court.*—Judgment and order affirmed.