HILLS, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 77–374–CR. Submitted on briefs December 5, 1979.—*
*Decided January 8, 1980.*
(Also reported in 286 N.W.2d 356.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Mark Lukoff,* first assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Edward S. Marion,* assistant attorney general.

BEILFUSS, C.J. On review defendant's sole contention is that his arrest was illegal and it was therefore error for the trial court to admit into evidence the out-of-court identifications.

The defendant's conviction arose out of his alleged participation with another man in the robbery of the apartment of Mrs. Cynthia Shay. Mrs. Shay returned home with her sixteen-month-old daughter at around 3 p.m., on December 1, 1976, to find that two men had broken into her apartment and were in the process of removing her possessions. One of the men ordered Mrs. Shay to sit down and remain quiet while the other finished removing her stereo from her bedroom. When the stereo was disconnected and removed, the men placed Mrs. Shay and her daughter in the bedroom, closed the door and left.

Defendant's conviction was based primarily upon the testimony of Cynthia Shay. She testified that on the same day as the robbery she had identified defendant at the Milwaukee police station by photograph and in a line-up as the man who had forced her to remain seated while the other man removed her stereo from

her bedroom. She also positively identified the defendant in court as one of the men who had robbed her.

Prior to trial defendant moved for the suppression of the out-of-court identifications and any subsequent or anticipated in-court identifications of him as a participant in the alleged offense. The stated grounds for the motion were that such evidence had been obtained by the state in violation of his Sixth and Fourteenth Amendment rights. At a pretrial hearing, defendant amended his motion to include the state's violation of his Fourth Amendment rights as an additional ground for the suppression of the identification. It was his contention that his arrest had been illegal because it was without probable cause and, therefore, the identifications which were the direct result of the arrest were inadmissible as "fruit of the poisonous tree" under the *Wong Sun*[1] doctrine.

Following a hearing the motion was denied and the case proceeded to trial. A jury found defendant guilty and a judgment of conviction was entered upon the verdict.

The basis of defendant's arrest was his apparent dominion and control over an automobile which less than two hours earlier had been used as the getaway vehicle in a robbery. Immediately after the two men who had robbed her left her apartment, Mrs. Shay telephoned the police. As she was making the call she looked out the front window and observed the men leaving in a brown Buick, license number JN–5802. One of the men spotted her looking out the window and the car quickly spun around in a parking lot across the street and sped rapidly away. Mrs. Shay immediately related to the police what had happened and described the car she had just seen drive away.

---

[1] *See Wong Sun v. United States,* 371 U.S. 471 (1963).

Detective Dale Buschmann of the Milwaukee Police Department received a dispatch over his radio at approximately 3 p.m., instructing him to investigate the reported robbery. The suspects were described as two black males driving a light brown over dark brown automobile, license number JN–5802. Buschmann began circling the area where the offense occurred. At 3:40 p.m., he observed a brown four-door Buick with a black vinyl top parked on the street. The car was carrying license plates with the number JN–5802. Detective Buschmann found the car unoccupied and decided to park nearby and keep it under surveillance.

Shortly thereafter Buschmann radioed for squad assistance. Patrolmen Koltermann and Pasko were dispatched to assist him and arrived on the scene at approximately 3:55 p.m. Buschmann informed the officers that two black males who had committed a robbery a short time earlier were seen leaving in the car parked there on the street. He instructed them to keep the car under surveillance and to check out anyone who approached it.

Buschmann then left and the officers backed their squad car into an alley and waited. While they were waiting they received a message over their radio that the car they were watching was registered to a man named Hills. In fact the registration was in the name of James Earl Hills.

At approximately 4:40 p.m., Officers Koltermann and Pasko observed a black male, later identified as the defendant, approach the car and enter it from the passenger side. They immediately drove their squad car up to the reported getaway car and ordered defendant to step back out of it. They then asked him his name and what he was doing.

Although the testimony is somewhat conflicting as to what defendant's exact response was, it appears that

he identified himself as Robert James Hills and stated that the car belonged to his brother, James Hills. Defendant also stated he was retrieving some of his clothing from the car. One of the arresting officers testified that defendant stated he was getting his coat from the car and that he was not wearing a coat at that time.

On the basis of these facts the officers placed defendant under arrest and conveyed him to police headquarters. Upon his arrival at the police station, two photographs were taken of defendant. It was from one of these photographs that Cynthia Shay first recognized and identified defendant as one of the robbers. Shortly thereafter she also picked defendant out of a line-up and again identified him as one of the robbers.

The dispositive issue in this case is whether the arrest of defendant was lawful. We believe it was and therefore hold that the identification evidence was properly admissible at trial.

■

"An arrest represents the exercise of the power of the state to deprive a person of his liberty." *Newspapers, Inc. v. Breier,* 89 Wis.2d 417, 436, 279 N.W.2d 179 (1979). As such it is "one of the most awesome weapons in the arsenal of the state." *Id.* It is a weapon that is intended for the protection of the public, but it is also one that is subject to abuse.

The requirement that arrests be based upon probable cause serves as a safeguard to protect citizens from rash and unreasonable interference with their privacy and from unfounded charges of crime. At the same time it also gives fair leeway to the state for enforcing the law for the protection of the public. "The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests." *Brinegar v. United States,* 338 U.S. 160, 176 (1949).

In *State v. Paszek,* 50 Wis.2d 619, 624–25, 184 N.W.2d 836 (1971), we described the requirement of probable cause for an arrest as follows:

"Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime. *Henry v. United States* (1959), 361 U.S. 98, 102, 80 Sup. Ct. 168, 4 L. Ed.2d 134. It is not necessary that the evidence giving rise to such probable cause be sufficient to prove guilt beyond a reasonable doubt, nor must it be sufficient to prove that guilt is more probable than not. It is only necessary that the information lead a reasonable officer to believe that guilt is more than a possibility. *Browne v. State, supra,* and it is well established that the belief may be predicated in part upon hearsay information. *Draper v. United States* (1959), 358 U.S. 307, 79 Sup. Ct. 329, 3 L. Ed.2d 327. The quantum of information which constitutes probable cause to arrest must be measured by the facts of the particular case. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 Sup. Ct. 407, 9 L. Ed.2d 441. . . ."

We have also stated that probable cause to arrest is less than the amount of evidence required for a bindover at a preliminary hearing. *State v. Williams,* 47 Wis.2d 242, 248, 177 N.W.2d 611 (1970).

Applying these principles to the case now before us, we conclude that at the time they took defendant into custody Officers Koltermann and Pasko had probable cause to effect a lawful arrest. It is undisputed that at that time the officers possessed the following information:

(1) A robbery had been committed at about 3 p.m., on December 1, 1976.

(2) The robbers were two black males who fled from the scene in a car registered to defendant's brother.

(3) The police located this car approximately forty minutes after the robbery and placed it under surveillance.

(4) No one approached the car until about an hour later when defendant entered it to retrieve his clothing from the back seat.

In addition, the trial court stated in its ruling on the motion to suppress that defendant was not wearing a coat and indicated that his coat was in the car. Although there was some confusion in the testimony with respect to this fact, the trial court's finding is not contrary to the great weight and clear preponderance of the evidence and is therefore to be accepted by this court.[2]

Based upon the above stated facts, we are unable to say that the officers acted improperly in taking defendant into custody. This court has in previous cases upheld arrests of suspects which were based almost entirely on the descriptions of the vehicles in which they were traveling rather than the suspects themselves.[3] Particularly where the description of a vehicle involved in a crime is so precise as to include its license number, a reasonable police officer who comes upon that vehicle such a short time after the commission of the crime is justified in the belief that the person then in control of the vehicle was probably also involved in that crime.

The arrest here is almost identical to that involved in *State v. Mabra,* 61 Wis.2d 613, 213 N.W.2d 545 (1974). In that case the arrest of defendant and his wife was based entirely upon the fact that his wife borrowed her brother's car which was later that same day used as

---

[2] *State v. Verhasselt,* 83 Wis.2d 647, 653, 266 N.W.2d 342 (1978).

[3] *Briggs v. State,* 76 Wis.2d 313, 251 N.W.2d 12 (1977), and *West v. State,* 74 Wis.2d 390, 246 N.W.2d 675 (1976).

the getaway vehicle in an armed robbery-murder. Two black males had been seen leaving a tavern and entering the car immediately after the tavern had been robbed and a patron shot. A witness took down the description and license number of the car as it left the scene. About one and one-half hours later the car was found abandoned on a city street. A search of it revealed a nylon stocking mask and a cap which fit the description of clothing worn by the robbers.

On the basis of this information the police put out a dispatch over the radio describing defendant's own car and instructing any officer who spotted that car to arrest the occupants for armed robbery and murder. That evening, in response to the radio bulletin, defendant's car was stopped and he and his wife arrested. We concluded that the facts known by the police, together with the reasonable deductions to be drawn from them, were sufficient to constitute probable cause for the arrests. *Id.*, 61 Wis.2d at 626.

The justification for defendant's arrest in the case now before us is even greater. In *State v. Mabra, supra,* it was the defendant's wife's possession of the car later identified as the getaway vehicle which connected him to the crime for which he was arrested. Here, defendant himself was shown to have substantial dominion and control over the same automobile in which the robbers had fled less than two hours earlier. Not only was defendant the only one to approach the car during the hour it was under police surveillance, but it was also apparent he had recently used or ridden in it from the fact that on a December afternoon he was coatless and was entering the car to retrieve his coat from the back seat. The fact that the car was registered in his family name lent further support to the officers' belief that defendant was probably one of the men who had sped away in it from Cynthia Shay's apartment. Taking all these facts

into consideration we conclude that the officers could reasonably have believed that defendant's guilt was more than a possibility. We hold therefore that the arrest was valid.

Because of our holding that the arrest was lawful, we need not decide whether out-of-court and in-court identifications following an unlawful arrest must be excluded under the *Wong Sun* doctrine. We note that this question with respect to in-court identifications is now before the United States Supreme Court in the case of *Crews v. United States*, (D.C. App.) 389 A.2d 277 (1978), cert. granted, 440 U.S. 907 (1979), but find it not controlling to our disposition of this case.

*By the Court.*—Judgment and order affirmed.