STATE of Wisconsin, Plaintiff-Appellant and Cross-Respondent,

v.

Wayne DROGSVOLD, Defendant-Respondent and Cross-Appellant.

Court of Appeals

*No. 80–1409–CR. Argued April 30, 1981.—Decided September 25, 1981.*
(Also reported in 311 N.W.2d 243.)

248

250

For the plaintiff-appellant and cross-respondent there were briefs by *James E. Doyle, Jr.,* Dane County District Attorney, and oral argument by *James E. Doyle, Jr.*

For the defendant-respondent and cross-appellant there there was a brief by *Thomas H. Brush* and *Oldenburg, Lent & Brush* of Madison, and oral argument by *Thomas H. Brush.*

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J. Defendant, Wayne Drogsvold, is charged with first-degree murder. Sec. 940.01(1), Stats. The state has appealed from an order suppressing defendant's post-arrest inculpatory statements and the evidence obtained as a result of those statements. Defendant cross-appeals from the same order which also denied his motion to dismiss the complaint and information.

The police arrested defendant in his home without a warrant. The trial court concluded that the arrest was unlawful because it was made without probable cause, in the absence of exigent circumstances, and for the purpose of obtaining evidence which would involve defendant in the homicide under investigation. The court suppressed defendant's statements because it concluded they were tainted by the unlawful arrest and because the court was unable to find beyond a reasonable doubt that the statements were voluntary. The court gave no reasons for denying the motion to dismiss. [1]

---

[1] The procedural history, in greater detail, is as follows: Defendant was arrested May 22, 1979 and first charged May 23, 1979. June 15, 1979, following an evidentiary hearing, the trial court granted defendant's motion to dismiss the complaint, on grounds that the arrest was made without probable cause to believe that defendant had committed a crime. The same day the

We reverse the suppression order and remand for further findings. Because the trial court's disposition of that matter may affect its decision on defendant's motion to dismiss, we reverse the order on that motion and remand for further proceedings.

1. *Effect Of Arrest On Subsequent Statements*

The trial court concluded that *Dunaway v. New York,* 442 U.S. 200 (1979), and *Payton v. New York,* 445 U.S. 573 (1980), prevent the state from using defendant's inculpatory statements at his trial. *Dunaway* held that incriminating statements by a criminal defendant during an unconstitutional detention may not be used against him, unless the connection between the illegal police conduct and giving the statements is "sufficiently attenuated." 442 U.S. at 216. The detention in *Dunaway* was unconstitutional under the fourth and fourteenth amendments because the police seized defendant without probable cause and transported him to the police station for interrogation. *Payton* held that absent exigent circumstances or consent, the warrantless arrest of a defendant in his home violates the fourth and fourteenth amendments.

A. *Probable Cause For Arrest*

Undisputed Facts

The Madison police arrested defendant about 1:00 a.m., May 22, 1979. The state established, without contradiction, that the following circumstances existed prior to and at the time of the arrest.

---

state recharged defendant with first-degree murder in a complaint which is the subject of this proceeding, and a warrant for his arrest was issued. Defendant was bound over for trial and an information was filed. Defendant moved to suppress his statements and to dismiss the second complaint. An evidentiary hearing was held. After considering the evidence adduced at the first and second hearings, the trial court granted the motion to suppress and denied the motions to dismiss.

About 10:40 p.m., May 21, 1979, Detective Grann was dispatched to the Sportsman's Bar in Madison regarding a shooting which had just occurred. Being in the area, he arrived at the bar in about one minute and saw a dead black man on the floor with a head wound. The bartender told Grann that the victim had been seated on a stool at the end of the bar. The bartender heard a "pop," saw a bottle break on the bar, and saw that the victim had fallen from the stool. The stool was about two or three feet from the street window. Grann saw what appeared to be a bullet hole in the window. The hole, the stool and the point on the bar where the bottle had shattered were in the same plane.

About 11:15 p.m. that night Detective Retelle spoke to Sandy Flak at the Sportsman's Bar. Flak told him that she had seen defendant a little after 9:00 p.m. that evening at Tiny's Bar, which is about one block from the Sportsman's Bar. Defendant had a lever action rifle. Flak saw him load the rifle two or three times. According to Flak, defendant indicated he was angry with black people because of an altercation which he had had that evening with a black man named Clarence, who was going to get a gun and shoot defendant. Flak told Retelle that defendant said he was sick and tired of bartenders "kissing all the niggers' asses" and that he was going to shoot every one of them that came through the door.

Detective Winston testified that about 12:30 a.m. that night two persons told him that between 7:00 and 7:30 p.m. they saw an altercation in the Sportsman's Bar between a white man they knew as "Wayne" Armstrong and a black man identified as "Clarence" Jones. Their description of the white man matched that of defendant Wayne Drogsvold, which the police already had obtained.

About midnight Detective Mell examined a police file which showed that defendant had been convicted of a felony, first-degree robbery, in California in 1967 and

had been arrested and convicted a number of other times.

The Madison Police Department files contained several criminal offense reports involving defendant, the latest of which was November 1977. The reports pertained mostly to fights, some 'with weapons.[2]

A black male, Ollie Williams, reportedly had an argument with the victim shortly before the victim's death. The police sought Williams during the investigation to arrest or question him.

Six officers were dispatched about 12:30 a.m. that night to arrest defendant. They arrived at defendant's home just outside Madison about 12:50 a.m. Four armed officers watched other doors while two officers went to the front door. The house was dark, except for a night light, and quiet. There was no apparent activity within the house.

The two officers entered the unlocked screened-in front porch and knocked on the front door a number of times. One of the officers held a shotgun with one hand on the slide and the other on the trigger. Defendant came to the door and looked out the window. The offi-

---

[2] The reports are summarized as follows: November 1977, defendant attacked complainant with a pool cue and fists for no reason and "had simply gone crazy and started fights with just about everyone in the bar." October 1976, defendant refused to pay a restaurant bill and fought off officers until they used mace to subdue him. December 1975, automobile had been set on fire and shots fired; car owner said that he had had an argument with defendant who carried a handgun. May 1975, tavern knife fight between defendant and a black male. November 1973, tavern fight. December 1972, an attack on a private security guard. August 1972, quarrel between the defendant and a woman in a bar, necessary to mace defendant to subdue him. March 1972, barroom fight. October 1966, disorderly conduct in a bar. October 1966, tavern fight. October 1966, defendant was picked up as an escapee from Mendota State Hospital, a mental institution. February 1966, burglary.

cers, one of whom was in uniform, identified themselves. Defendant unlocked the door, opened it and the officers entered the house. They told defendant, who was in a bathrobe and appeared as though he had gotten out of bed, to get dressed and that he was under arrest. The arrest occurred between 1:00 and 1:05 a.m. The officers walked around the house to secure the premises but made no search and seized no evidence. Defendant said nothing. After defendant dressed himself, the officers handcuffed and took him to the police station, where defendant subsequently made the incriminating statements which the trial court suppressed.

## Applicable Law

Probable cause is the *sine qua non* of a lawful arrest. This absolute requirement is derived from the fourth amendment, which is made applicable to the states by the fourteenth amendment. *Dunaway,* 442 U.S. at 208; *Mapp v. Ohio,* 367 U.S. 643, 655 (1961). Probable cause requires that, at the moment the arrest was made, the officers had facts and circumstances within their knowledge and of which they had reasonably trustworthy information which are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. *Beck v. Ohio,* 379 U.S. 89, 91 (1964). The requirement deals with probabilities which are not technical but "are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175 (1949). The quantum of evidence necessary for probable cause to arrest is less than that for guilt but is more than bare suspicion. *Brinegar,* 338 U.S. at 174–75.

Probable cause has been equated with reasonable grounds. *Johnson v. State,* 75 Wis. 2d 344, 348, 249 N.W.2d 593, 595–96 (1977) ; *Ball v. State,* 57 Wis. 2d 653, 659, 205 N.W.2d 353, 355 (1973). The question is whether the "facts and circumstances . . . were such that police officers of reasonable caution could have believed the defendant probably committed the crime." *Johnson,* 75 Wis. 2d at 350, 249 N.W.2d at 597. Their information need only be sufficient "to lead a reasonable officer to believe that guilt is more than a possibility." *State v. Paszek,* 50 Wis. 2d 619, 625, 184 N.W.2d 836, 840 (1971). The test is not, however, "the articulation of the policeman's subjective theory but the objective view of the facts." *Dodd v. Beto,* 435 F.2d 868, 870 (5th Cir. 1970), *cert. denied,* 404 U.S. 845 (1971). The individual officer making the arrest need not have the requisite knowledge. The question is whether "all the collective information in the police department is adequate to sustain the arrest." *Johnson,* 75 Wis. 2d at 350, 249 N.W.2d at 596.

### Scope Of Review

Having set forth the undisputed evidence and the applicable legal principles, it is necessary that we state the standard for appellate review of the trial court's finding that the police lacked probable cause to arrest defendant.

The traditional appellate standards of review cover three types of trial court action, characterized as findings of fact, conclusions of law and the exercise of discretion.

If the trial court's finding is one of fact where the facts are disputed, the reviewing court may not disturb the trial court's finding unless it is against the great weight and clear preponderance of the evidence. *State v. Mazur,* 90 Wis. 2d 293, 303, 280 N.W.2d 194, 198

(1979); *Jones v. Jenkins*, 88 Wis. 2d 712, 722, 277 N.W.2d 815, 819 (1979). If the finding is an inference drawn from undisputed facts, and if only one inference can be reasonably drawn from the facts, then a question of law is presented, *State v. Ziegenhagen*, 73 Wis. 2d 656, 663–64, 245 N.W.2d 656, 660 (1976), and *Kress Packing Co. v. Kottwitz*, 61 Wis. 2d 175, 178, 212 N.W.2d 97, 99 (1973); but if the finding is one of several reasonable inferences, then the reviewing court must accept the inference chosen by the trial court. *Estate of Beale*, 15 Wis. 2d 546, 556, 113 N.W.2d 380, 385 (1962); *Kollasch v. Adamany*, 99 Wis. 2d 533, 549, 299 N.W.2d 891, 898 (Ct. App. 1980). If the trial court's finding is one of law, the appellate court may arrive at its own conclusion without special deference to the decision under review. *First Nat. Leasing Corp. v. Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977); *Browne v. State*, 24 Wis. 2d 491, 511a, 129 N.W.2d 175, 184–85 (1964), *cert. denied*, 379 U.S. 1004 (1965). The finding may be one of mixed fact and law, in which case the factual determination, if divisible, will not be reversed on appeal unless contrary to the great weight and clear preponderance of the evidence and the legal conclusion may be reviewed anew. *In Matter of Adoption of R.P.R.*, 98 Wis. 2d 613, 618–19, 297 N.W.2d 833, 836 (1980); *Department of Revenue v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979), *aff'd* 447 U.S. 207 (1980). *Compare State v. Burnett*, 30 Wis. 2d 375, 381, 141 N.W.2d 221, 224 (1966), *cert. denied*, 386 U.S. 917 (1967); *Phillips v. State*, 29 Wis. 2d 521, 527, 139 N.W.2d 41, 43 (1966). Finally, appellate review of a discretionary ruling is limited to whether the trial court exercised and abused its discretion. *Barrera v. State*, 99 Wis. 2d 269, 279, 298 N.W.2d 820, 824 (1980), *cert. denied*, 451 U.S. 972 (1981); *Wis. Asso. of Food Dealers v. City of Madison*, 97 Wis. 2d 426, 429, 293 N.W.2d 540, 542 (1980).

It may be difficult to determine which of the three areas of traditional review—fact, law or discretion—applies to the issue at hand, but once that determination is made, we must apply the appropriate standard, and no other. The restraint upon us is partly constitutional. The jurisdiction of the court of appeals is constitutionally restricted to appellate review under art. VII, sec. 5(3) of the Wisconsin Constitution. That limitation precludes the court of appeals "from making any factual determinations where the evidence is in dispute." *Wurtz v. Fleischman,* 97 Wis. 2d 100, 107 n. 3, 293 N.W.2d 155, 159 (1980). We have been cautioned against usurping the fact-finding function of the trial court. *Barrera,* 99 Wis. 2d at 282, 298 N.W.2d at 826.

Defendant contends that the scope of review should be the same as that applicable to the decision of a magistrate following a preliminary examination. The issue in a preliminary examination is whether there is probable cause to believe a felony has been committed by the defendant. Sec. 970.03, Stats. The standard to review the magistrate's decision on that issue is usually stated as follows:

"The reviewing court can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. When the reviewing court has discovered that there is competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, it has reached the limit of its jurisdiction and cannot go beyond that and weigh the evidence."

*State ex rel. Hussong v. Froelich,* 62 Wis. 2d 577, 583, 215 N.W.2d 390, 394 (1974), quoting *State ex rel. Marachowsky v. Kerl,* 258 Wis. 309, 313, 45 N.W.2d 668, 670 (1951); *Cranmore v. State,* 85 Wis. 2d 722, 735, 271 N.W.2d 402, 410 (Ct. App. 1978).

The probable cause requirement is common to a lawful arrest and a bindover for trial following a preliminary examination. Accordingly, it is plausible that the *Hussong* formulation should apply to review of probable cause for an arrest. Plausibility fades, however, on analysis.

First, we are ultimately to review a decision made by the arresting police, not a judicial officer. The arresting police and the examining magistrate are held to different standards. The evidence the police must have to establish probable cause to arrest is less than that required for a magistrate's finding of probable cause to believe that the defendant committed the crime charged. *Hills v. State,* 93 Wis. 2d 139, 145, 286 N.W.2d 356, 358 (1980) ; *State v. Berby,* 81 Wis. 2d 677, 683, 260 N.W.2d 798, 801 (1978) ; *Sanders v. State,* 69 Wis. 2d 242, 255, 230 N.W.2d 845, 853 (1975) ; *State v. Williams,* 47 Wis. 2d 242, 248, 177 N.W.2d 611, 614–15 (1970) ; *State v. Knoblock,* 44 Wis. 2d 130, 134, 170 N.W.2d 781, 783 (1969).

Second, the scope of appellate review of the magistrate's finding as to probable cause is not as clear as might first appear from the *Hussong* formulation. In *Berby,* 81 Wis. 2d at 684 n. 7, 260 N.W.2d at 802, the supreme court commented on the same quotation we have taken from *Hussong* as follows: "This approach is analogous to other standards of evidentiary appellate review whereby this court will only overturn the trial court if the finding is against the great weight and clear preponderance of the evidence." In *Wittke v. State ex rel. Smith,* 80 Wis. 2d 332, 349–53, 259 N.W.2d 515, 522–24 (1977), the supreme court independently reviewed the undisputed evidence at a preliminary examination, concluded the evidence showed probable cause as a matter of law, and held that the magistrate erred in dismissing the complaint, all without referring to *Hussong. State*

*v. Sirisun,* 90 Wis. 2d 58, 61–62, 279 N.W.2d 484, 485–86 (Ct. App. 1979), applying the *Hussong* formulation, found that a trial court abused its discretion by dismissing a complaint after a preliminary hearing.

We conclude that the scope of appellate review of a trial court's finding on probable cause for arrest cannot safely be analogized to review of a magistrate's finding as to probable cause following a preliminary examination.

As a practical matter, the supreme court of this state has invariably reached its own conclusion on probable cause for an arrest where the facts as to the information available to the police were undisputed.[3] The cases noted in the footnote affirmed findings of probable cause

---

[3] Among others, *see State v. Cheers,* 102 Wis. 2d 367, 389–98, 306 N.W.2d 676, 686–90 (1981); *Briggs v. State,* 76 Wis. 2d 313, 321–22, 251 N.W.2d 12, 15 (1977); *Schaffer v. State,* 75 Wis.2d 673, 675–79, 250 N.W.2d 326, 328–30 (1977); *Loveday v. State,* 74 Wis.2d 503, 522–26, 247 N.W.2d 116, 127–28 (1976); *West v. State,* 74 Wis.2d 390, 398, 246 N.W.2d 675, 680 (1976); *State v. Phelps,* 73 Wis.2d 313, 316–17, 243 N.W.2d 213, 214–15 (1976); *Wendricks v. State,* 72 Wis.2d 717, 725–27, 242 N.W.2d 187, 191–92 (1976); *Sanders v. State,* 69 Wis.2d 242, 250–55, 230 N.W.2d 845, 851–53 (1975); *State v. Shears,* 68 Wis.2d 217, 252–55, 229 N.W.2d 103, 121–22 (1975); *Rinehart v. State,* 63 Wis.2d 760, 768, 218 N.W.2d 323, 327 (1974); *State v. Estrada,* 63 Wis. 2d 476, 494–96, 217 N.W.2d 359, 368–70, *cert. denied,* 419 U.S. 1093 (1974); *State v. Mabra,* 61 Wis.2d 613, 625–26, 213 N.W.2d 545, 551–52 (1974); *Laster v. State,* 60 Wis.2d 525, 532–35, 211 N.W.2d 13, 16–18 (1973); *State v. Taylor,* 60 Wis.2d 506, 513, 210 N.W.2d 873, 877 (1973); *Soehle v. State,* 60 Wis.2d 72, 76, 208 N.W.2d 341, 344 (1973); *Leroux v. State,* 58 Wis.2d 671, 681–86, 207 N.W.2d 589, 595–98 (1973); *Ball v. State,* 57 Wis. 2d 653, 659, 205 N.W.2d 353, 355–56 (1973); *Waite v. State,* 57 Wis. 2d 218, 222, 203 N.W.2d 719, 721 (1973); *Molina v. State,* 53 Wis.2d 662, 671–73, 193 N.W.2d 874, 878–80, *cert. denied,* 407 U.S. 923 (1972); *State v. Paszek,* 50 Wis.2d 619, 184 N.W.2d 836 (1971); *State v. DiMaggio,* 49 Wis. 2d 565, 572–75, 182 N.W.2d 466, 471–72, *cert. denied,* 404 U.S. 838 (1971); *State v. Williams,* 47 Wis. 2d 242, 247–48, 177 N.W.2d 611, 614–15 (1970); *State v. Camara,* 28 Wis. 2d 365, 373–75, 137 N.W.2d 1, 5–6 (1965).

on undisputed facts. In *State v. Doyle,* 96 Wis. 2d 272, 286–90, 291 N.W.2d 545, 551–53 (1980), the supreme court concluded on the undisputed facts that the trial court erred in finding lack of probable cause for the arrest. After applying the preponderance test to findings on disputed facts, the supreme court on independent review has found probable cause on those findings and on the undisputed facts. *Hills,* 93 Wis. 2d at 145–48, 286 N.W.2d at 358–59. Although the supreme court did not in those cases discuss the scope of review appropriate to the issue of probable cause for arrest, it decided the issue as if it were one of law. We have located no decision by the supreme court clearly treating the question as one of fact or discretion.[4]

In *Beck v. Ohio,* 379 U.S. 89 (1964), the United States Supreme Court reviewed the record consisting of testimony by an arresting officer and concluded that the arrest lacked probable cause, the trial court having made no findings of fact. The *Beck* court, 379 U.S. at 92, quoted as follows from *Ker v. California,* 374 U.S. 23, 34 (1963) :

While this Court does not sit as in nisi prius to appraise contradictory factual questions, it will, where necessary to the determination of constitutional rights, make an independent examination of the facts, the findings, and

[4] *Schenk v. State,* 51 Wis.2d 600, 605, 187 N.W.2d 853, 856 (1971), asserted that determinations by the trial court as to probable cause, adequate warning of constitutional rights and voluntariness of statements were not against the great weight and clear preponderance of the evidence, without distinguishing between the three determinations. The footnote supporting citation is to *State v. Carter,* 33 Wis. 2d 80, 91, 146 N.W.2d 466, 472 (1966), *cert. denied,* 387 U.S. 911 (1967), which did not deal with probable cause. If this ambiguous assertion is precedent for the proposition that a finding of probable cause to arrest is a finding of fact, it appears to be contrary to more recent decisions treating the issue as one of law, at least where the facts are undisputed.

the record so that it can determine for itself whether in the decision as to reasonableness the fundamental— i.e., constitutional—criteria established by this Court have been respected.

The Supreme Court in *Ker* reviewed the record to determine whether probable cause existed for an arrest. We read *Beck* and *Ker* as permitting independent appellate review to determine whether probable cause existed.[5]

Federal cases following *Beck* and *Ker* have held that whether probable cause exists may be independently determined by an appellate court as a legal conclusion where the historial facts have been established. *United States v. Belle,* 593 F.2d 487, 497 n. 14 (3rd Cir.), *cert. denied,* 442 U.S. 911 (1979); *United States v. Cutting,* 552 F.2d 761, 763 (7th Cir.), *cert. denied,* 432 U.S. 909 (1977); *United States v. One Twin Engine Beech Airplane Etc.,* 533 F.2d 1106, 1107–09 (9th Cir. 1976); *Linn v. Garcia,* 531 F.2d 855, 861 (8th Cir. 1976).[6]

---

[5] Where the issue is the reasonableness of a search or a temporary detention without arrest, the supreme court of this state "will independently examine the circumstances of the case to determine whether the constitutional requirement of reasonableness is satisfied." *State v. Goebel,* 103 Wis. 2d 203, 209, 307 N.W.2d 915, 918 (1981), quoting *Bies v. State,* 76 Wis.2d 457, 469, 251 N.W.2d 461, 467 (1977), which relies in part on *Ker v. California,* 374 U.S. 23 (1963).

[6] The ninth circuit has suggested that probable cause determinations are perhaps to be reviewed as questions of fact but that the matter is "not free from doubt." *See United States v. Flickinger,* 573 F.2d 1349, 1356 n. 2 (9th Cir), *cert. denied,* 439 U.S. 836 (1978); *United States v. Thompson,* 558 F.2d 522, 524–25 (9th Cir. 1977), *cert. denied,* 435 U.S. 914 (1978). Those cases relied on *United States v. Hart,* 546 F.2d 798, 801–02 (9th Cir. 1976) (en banc), *cert. denied,* 429 U.S. 1120 (1977), in which a divided court announced that it would apply the standard for review of questions of fact to mixed questions of law and fact. The ninth circuit's reference to *Hart* indicates that it views probable cause as a mixed question of law and fact. In such cases, we independently review the legal conclusion once the historical facts

■ We conclude that if the historical facts are undisputed, probable cause for an arrest is a question of law which is subject to an independent review on appeal, without deference to the conclusion of the trial court on the issue.

## Probable Cause Established For Arrest

■ Upon examination of the undisputed evidence, we conclude that the facts so distinguished defendant from the rest of the population as to ·entitle the police to believe that he probably committed the homicide. The police knew defendant had reportedly quarreled that night with a black man in the Sportsman's Bar. Less than two hours before the black victim was shot through the window of the same bar, defendant displayed a loaded rifle and announced in another bar about a block away that he intended to kill every black person who came through the door. Whether that evidence was sufficient for a conviction was no concern of the police. The police could interpret the extraordinary circumstances as more than coincidence and as creating more than a bare possibility that defendant was guilty. The concatenation of the facts so closely linked defendant to the killing as to make him more than a mere suspect.

have been established. *Department of Revenue v. Exxon Corp.*, 90 Wis.2d 700, 713, 281 N.W.2d 94, 101 (1979), *aff'd* 447 U.S. 207 (1980).

Where the issue in a civil case was whether a prosecution was carried on without probable cause, Lord Mansfield said:

The question of probable cause is a mixed proposition of law and fact. Whether the circumstances alleged to shew it probable, or not probable, are true and existed, is a matter of fact; but whether, supposing them true, they amount to a probable cause, is a question of law . . . .

*Johnstone v. Sutton*, 1 T.R. 510, 545 (1786).

Defendant's arrest is not invalidated by the fact that the police sought that same night to arrest or question a different man who had argued with the victim. 1 LaFave, *Search and Seizure* sec. 3.2 at 476–82 (1978), discusses the question of probable cause to arrest when the police obtain information which does not point exclusively to one individual. Professor LaFave concludes that probable cause does not exist under these circumstances unless the information singles out one individual.[7] The facts known to the police about defendant's activities before the shooting singled him out over the other individual who was also wanted by the police.[8]

B. *Exigent Circumstances*

## Applicable Law

In the absence of consent or exigent circumstances, "entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant." *Steagald v. United States,* 451 U.S. 204, 211 (1981) (68 L Ed 2d 38, 45); *Payton,* 445 U.S. at 590. The warrantless entry, in the

---

[7] LaFave cites *Wong Sun v. United States,* 371 U.S. 471 (1963); *Mallory v. United States,* 354 U.S. 449 (1957); and *Johnson v. United States,* 333 U.S. 10 (1948).

[8] We do not reach the state's contention, rejected by the trial court, that the police collectively possessed information establishing probable cause to believe that defendant had violated 18 U.S.C. App. sec. 1202(a)(1), which makes it a crime for a convicted felon to receive, possess or transport a firearm in interstate commerce. The contention was based on defendant's felony conviction in California and Officer Whitfield's statements that he knew the companies which manufacture lever action rifles, knew that no such companies manufacture those rifles in Wisconsin and knew that the vast majority of rifles are manufacturers' standard issue, even though gunsmiths make custom-made rifles in this state.

absence of consent or an exigency, is unlawful even when accomplished under statutory authority and when probable cause for the arrest is present. *Payton*, 445 U.S. at 589.

Thus, our conclusion that probable cause existed to arrest defendant cannot insulate his warrantless arrest in his home from a constitutional violation. And this is true even though the police could have constitutionally arrested him in public, including the threshold of his home, solely on probable cause without a warrant and in the absence of exigent circumstances. *United States v. Santana*, 427 U.S. 38, 42 (1976); *United States v. Watson*, 423 U.S. 411 (1976).

The necessity for a warrant to arrest a person in his home, absent consent or exigent circumstances, is based not only on the fourth amendment to the United States Constitution but on art. I, sec. 11 of the Wisconsin Constitution. *Laasch v. State*, 84 Wis. 2d 587, 595, 267 N.W. 2d 278, 283 (1978).

The state does not contend that defendant consented to entry by the police of his home. The validity of the entry and subsequent arrest therefore turns on whether the police faced exigent circumstances.

Whether exigent circumstances existed was not an issue in *Steagald, supra. Payton* involved two appeals: *Payton v. New York* and *Riddick v. New York*. The Supreme Court treated those cases as had the New York courts, as involving routine arrests in which there was ample time to obtain warrants. The Supreme Court said, "Accordingly, we have no occasion to consider the sort of emergency or dangerous situation, described in our cases as 'exigent circumstances,' that would justify a warrantless entry into a home for the purpose of either arrest or search." 445 U.S. at 583.

Exigent circumstances exist where it is dangerous not to act immediately. "The Fourth Amendment does not require police officers to delay in the course of an in-

vestigation if to do so would gravely endanger their lives or the lives of others." *Warden v. Hayden,* 387 U.S. 294, 298–99 (1967) (warrantless arrest and search of building for armed suspect and weapons justified where police were informed that armed robbery had occurred five minutes before and that suspect had entered building searched).

The supreme court of this state in *Laasch* has broadly referred to exigent circumstances for an arrest within a home as those which make it "impracticable to obtain a warrant." 84 Wis. 2d at 591, 267 N.W.2d at 281. The *Laasch* court, 84 Wis. 2d at 596, 267 N.W.2d at 284, quoted with approval as follows from *Dorman v. United States,* 435 F.2d 385, 392 (D.C. Cir. 1970) : "Terms like 'exigent circumstances' or 'urgent need' are useful in underscoring the heavy burden on the police to show that there was a need that could not brook the delay incident to obtaining a warrant . . . ."[9]

## Scope Of Review

The supreme court of this state has regularly treated the question of exigent circumstances as subject to independant review upon appeal, where the historical facts attending the arrest or search are undisputed or have been found by the trial court.[10] In a warrantless search

[9] *Dorman v. United States,* 435 F.2d 385, 392–93 (D.C. Cir. 1970), lists several factors or considerations as useful when determining whether exigent circumstances exist. Although many other jurisdictions have used the *Dorman* factors as a basis for analysis, the supreme court of this state has not.

[10] *State v. Prober,* 98 Wis.2d 345, 360–66, 297 N.W.2d 1, 9–12 (1980) ; *La Fournier v. State,* 91 Wis.2d 61, 68–69, 280 N.W.2d 746, 749–50 (1979) ; *Laasch v. State,* 84 Wis.2d 587, 592, 267 N.W.2d 278, 282 (1978) (warrantless entry to arrest invalid for lack of exigent circumstances, trial court apparently having made no findings as to whether exigency existed) ; *State v. Monahan,* 76 Wis. 2d 387, 398–99, 251 N.W.2d 421, 425–26 (1977) ; *West*

case, *Bies v. State,* 76 Wis. 2d 457, 468–69, 251 N.W.2d 461, 467 (1977), the supreme court noted that the ultimate standard under the fourth amendment is reasonableness, and said:

On review of an order suppressing evidence, the findings of fact, if any, of the trial court will be sustained unless against the great weight and clear preponderance of the evidence. *State v. Pires,* 55 Wis. 2d [597,] 602, 603, [201 N.W.2d 153, 156 (1972)]. However, this court will independently examine the circumstances of the case to determine whether the constitutional requirement of reasonableness is satisfied. *See State v. Carter,* 33 Wis. 2d 80, 89–96, 146 N.W.2d 466, [471–75] (1966), *cert. denied* 387 U.S. 911 [1967]; *Ker v. California,* 374 U.S. 23, 33, 34 . . . [1963].

Federal Courts of Appeal have generally treated findings by trial courts as to exigent circumstances for warrantless entry and arrest or search as factual findings. *See, e.g., United States v. Jones,* 635 F.2d 1357, 1360 (8th Cir. 1980); *United States v. Flickinger,* 573 F.2d 1349, 1357 (9th Cir.), *cert. denied,* 439 U.S. 836 (1978); *United States v. Bradshaw,* 515 F.2d 360, 364–65 (D.C. Cir. 1975), *cert. denied,* 424 U.S. 956 (1976); *United States v. Gargotto,* 510 F.2d 409, 411 (6th Cir. 1974), *cert. denied,* 421 U.S. 987 (1975).[11] The federal courts

---

*v. State,* 74 Wis. 2d 390, 399–400, 246 N.W.2d 675, 680–81 (1976); *Sanders v. State,* 69 Wis. 2d 242, 255, 230 N.W.2d 845, 853 (1975); *State v. Elam,* 68 Wis.2d 614, 624–25, 229 N.W.2d 664, 670 (1975); *Rinehart v. State,* 63 Wis.2d 760, 768, 218 N.W.2d 323, 327 (1974); *State v. Bell,* 62 Wis.2d 534, 542–43, 215 N.W.2d 535, 540 (1974); *State v. Pires,* 55 Wis.2d 597, 603–07, 201 N.W.2d 153, 156–58 (1972). Note, however, *State v. Donovan,* 91 Wis.2d 401, 414, 283 N.W.2d 431, 436 (Ct App 1979) (exigency characterized as "substantial, not slight, and for that reason [court found] the trial court's findings contrary to the great weight and clear preponderance of the evidence").

[11] Both the ninth circuit, *United States v. Flickinger,* 573 F.2d 1349, 1356–57 (9th Cir.), *cert. denied,* 439 U.S. 836 (1978) and the District of Columbia circuit, *United States v. Bradshaw,* 515

occasionally treat exigency as a question of law where the historical facts are established. *See, e.g., United States v. Houle,* 603 F.2d 1297 (8th Cir. 1979) ; *United States v. Kulcsar,* 586 F.2d 1283, 1286–88 (8th Cir. 1978) (applying considerations outlined in *Dorman,* 435 F.2d 385) ; *Government of Virgin Islands v. Gereau,* 502 F.2d 914, 928–29 (3rd Cir. 1974), *cert. denied,* 420 U.S. 909 (1975) (exigency found after examining findings and record, applying *Dorman* factors and citing *Ker,* 324 U.S. at 24, and *United States v. 1964 Ford Thunderbird,* 445 F.2d 1064, 1069 (3rd Cir. 1971), *cert. denied,* 405 U.S. 964 (1972), in which probable cause issue was independently reviewed on appeal).

We conclude that where the historical facts are undisputed, as here, the existence of exigent circumstances which justify a warrantless arrest is a question of law which is subject to independent appellate review, without deference to the trial court's conclusion.

## Exigent Circumstances Established

Defendant's arrest was hardly "routine." It was not preceded by a lengthy planning period. The decision to arrest was made no later than 12:30 a.m. when the police were dispatched. They arrived at defendant's home

F.2d 360, 364–65 (D.C. Cir. 1975), treat the existence of exigent circumstances as a mixed question of law and fact. The ninth circuit bases its application of the standard for review of questions of fact on *United States v. Hart,* 546 F.2d 798, 801–02 (9th Cir. 1976) (en banc), *cert. denied,* 429 U.S. 1120 (1977). *See Flickinger,* 573 F.2d at 1356 n. 2. The District of Columbia circuit does not explain why it applies the standard of review for findings of fact to determinations of exigency. If "exigent circumstances" is a mixed question of law and fact, we apply the standard of review for facts to the factual determinations, and independently review the legal conclusions based on those facts. *See Department of Revenue v. Exxon Corp.,* 90 Wis.2d 700, 713, 281 N.W.2d 94, 101 (1979), *aff'd* 447 U.S. 207 (1980).

at 12:50 a.m. The police did not know if he was in his home. So far as the police knew, however, defendant was armed with the same weapon they had cause to believe he used to kill a man only about two hours earlier, he had announced an intent to kill blacks generally, and he had a history of resisting arrest. (*See* n. 2.) The police could not know whether he was asleep, waiting in ambush and prepared to resist, or preparing to kill another person.

The practicality of waiting for an arrest warrant was dubious. The supreme court has judicially noticed that "it would indeed be difficult to procure a warrant at [midnight] or even the next day." *Rinehart v. State*, 63 Wis. 2d 760, 768, 218 N.W.2d 323, 327 (1974).

Hindsight may indicate that the police perhaps could have maintained security at defendant's home while they sought a warrant. Deciding whether an exigency exists is nevertheless a matter of predicting whether it is necessary to arrest now rather than later. A reasonable judgment by the police at the scene should not lightly be overturned by the courts. "Judicial retrospective mulling fails to effectively weigh exigencies unless considered in the perspective of the immediacy confronting the officer." *State v. Donovan*, 91 Wis. 2d 401, 414, 283 N.W. 2d 431, 436 (Ct. App. 1979). As noted by 2 LaFave, *Search and Seizure* sec. 6.1 at 394 (1978) (footnotes omitted) :

[O]fficers in the field must often take immediate action even though the person to be arrested could probably be found later and arrested pursuant to a warrant obtained in the meantime. Not infrequently, a prompt entry to arrest is called for in order to minimize the risk that someone will be injured or killed. . . . Delay may also increase the risk of harm to persons outside the premises. The passage of time may enhance the ability of those inside to make an effective forcible resistance when the police ultimately make their entry to arrest. And if the police are required to stake out the premises

while a warrant is obtained, this may cause curious by-standers to gather in the immediate vicinity, where they might well be harmed in the event of forcible resistance to the police entry.

The trial court found that the arrest was made to interrogate defendant and that the police could have interviewed him in his home or have requested him to accompany them to the police station for an interview, but did not.

The finding that the arrest was made to interrogate defendant is a finding of fact. Factual findings by a trial court are subject to the great weight and clear preponderance standard of review. Applying that standard, we find no evidentiary basis in the record, express or inferential, for the finding. Defendant fails on appeal to refer to a basis in the record for the finding. Defendant testified that the officers told him he was arrested "for suspicion of murder" and that he was interrogated that night, but neither defendant nor any officer who testified stated that he was arrested for questioning. Most arrested persons are interrogated. That defendant was interrogated does not mean that interrogation was the purpose of his arrest. The finding is contrary to the great weight and clear preponderance of the evidence.

We hold that the nature and gravity of the offense, defendant's announced intentions and violent history, and the difficulties in obtaining a warrant, created exigent circumstances which justified his warrantless arrest in his home.

C. *Conclusion As To Effect Of Arrest On Statements*

Having concluded that defendant's arrest was made on probable cause and that exigent circumstances attended

the arrest, we hold that the arrest was valid. Accordingly, we need not decide the attenuation issue raised by the trial court on the basis of *Dunaway, supra.*

We conclude that the circumstances of defendant's arrest do not support the order to suppress his statements.

2. *Voluntariness Of Statements*

The trial court satisfied itself that defendant was advised and was aware of and understood his *Miranda* rights.[12] The court concluded, however:

[That] the circumstances surrounding and preceding his statements were such that the Court cannot find beyond a reasonable doubt that they were voluntary in that they were obtained after an illegal arrest and after the stratagem and inference of the police that by making a statement the defendant could negate or minimize the charges against him.

Undisputed Facts

The facts described by the court in its memorandum decision regarding the circumstances of defendant's statements are as follows:

After defendant's arrest, he was taken to the police station. He was alone in an interview room for one and one-half hours, then interrogated for one and one-half to two hours, again left alone for one hour and again questioned for one and one-half hours. During his second interrogation defendant acknowledged firing a rifle at the front of a building and disclosed where the rifle could be found.[13] The court observed that although de-

---

[12] *Miranda v. Arizona,* 384 U.S. 436 (1966).

[13] Defendant's question-and-answer statement is considerably more detailed. According to that statement, defendant went to the Sportsman's Bar in the early evening where he quarreled with a black man. He left to get his brother's lever action 30/30 rifle and shells, and went to Tiny's with the rifle. He then walked to

fendant was unsophisticated, he was no stranger to the criminal justice system and had on several earlier occasions been advised of his rights regarding interrogation, had occasionally exercised those rights and had on occasion waived them.

The court found that before he made the inculpatory statements, defendant was told that the investigation concerned a homicide and that the charges against him could run from negligent discharge of a weapon to murder but would probably not be first-degree murder. The court said that prior to the statements the police had little or no evidence which would constitute a basis for a criminal complaint against defendant. The trial court said that although this interrogation technique might not be classified as a trick, it was an interrogative stratagem to convince the defendant to make a statement that would acknowledge his involvement but minimize its extent, and that such a statement was obtained.

## Applicable Law

Inculpatory statements by an accused are inadmissible in a criminal prosecution, even if made after *Miranda* warnings have been given, unless the statements are made voluntarily. *McAdoo v. State,* 65 Wis. 2d 596, 605, 223 N.W.2d 521, 526 (1974) ; *State v. Parker,* 55 Wis. 2d 131, 135, 197 N.W.2d 742, 745 (1972), *cert. denied,* 409 U.S. 1110 (1973). A defendant "is deprived of due process of law if his conviction is founded, in whole

the Sportsman's Bar "to see if he was going to do something about what happened," left the rifle outside and entered the bar. Defendant left when the man he was looking for was absent. He picked up his rifle, fired at the front of the building to "scare them," and ran without knowing if he had hit anything. He put the rifle in a car at his home.

or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction." *Jackson v. Denno,* 378 U.S. 368, 376 (1964) (citations omitted). The state must prove voluntariness beyond a reasonable doubt. *State v. Verhasselt,* 83 Wis. 2d 647, 653, 266 N.W.2d 342, 345 (1978) ; *McAdoo,* 65 Wis. 2d at 605, 223 N.W.2d at 526.

*State v. Wedgeworth,* 100 Wis. 2d 514, 524–25, 302 N.W.2d 810, 816 (1981), approved the following description in *Norwood v. State,* 74 Wis. 2d 343, 364–65, 246 N.W.2d 801, 812–13 (1976), *cert. denied,* 430 U.S. 949 (1977), of voluntariness and the circumstances which affect it:

"To be admissible into evidence, an inculpatory statement must be the voluntary product of a free and unconstrained will, reflecting deliberateness of choice. The question is whether it was obtained under such circumstances that it represents the uncoerced free will of the declarant or whether the circumstances deprived him of the ability to make a rational choice.

"Whether or not a statement is voluntary and not the result of coercion depends on the totality of circumstances surrounding the statement. A careful balancing must be made between the personal characteristics of the declarant and the pressures to which he was subjected in order to induce the statement.

"In [*State v. Schneidewind,* 47 Wis. 2d 110, 117, 176 N.W.2d 303, 307 (1970)], this court set forth the relevant factors which must be considered on both sides of the balance:

" '. . . Courts must look to the "totality of the circumstances" in determining whether a confession or admission can be called voluntary. A court must examine such factors as the age of the accused, *Haley v. Ohio* (1948), 332 U.S. 596, 68 Sup. Ct. 302, 92 L. Ed. 224; the education and intelligence of the accused, *Townsend v. Sain* (1963), 372 U.S. 293, 83 Sup. Ct. 745, 9 L. Ed. 2d 770; the conditions under which the interrogation took place, *Fay v. Noia* (1963), 372 U.S. 391, 83

Sup. Ct. 822, 9 L. Ed. 2d 837; the physical and mental condition of the accused, *Blackburn v. Alabama* (1960), 361 U.S. 199, 80 Sup. Ct. 274, 4 L. Ed. 2d 242; and any inducements, methods and stratagems which were used to persuade the accused to confess, *Lynumn v. Illinois* (1963), 372 U.S. 528, 83 Sup. Ct. 917, 9 L. Ed. 2d 922; and what the responses were to his requests for counsel, *Haynes v. Washington* (1963), 373 U.S. 503, 83 Sup. Ct. 1336, 10 L. Ed. 2d 513.' " (Citations omitted in part.)

### Scope Of Review

The state urges that we find that the evidence established beyond a reasonable doubt that defendant's statement was voluntary. Defendant contends that the evidence supports a contrary finding.

We need not determine the extent to which an appellate court may review a trial court's finding as to the voluntariness of an inculpatory statement. No such finding was made.

The trial court found itself unable to find voluntariness beyond a reasonable doubt because the statements were obtained after an illegal arrest and because the statements were obtained as the result of a police stratagem. The trial court made few references to the many other circumstances making up the totality to be considered when determining whether an inculpatory statement is voluntary.

We conclude, from the nature of the circumstances relied on by the court and its sparse references to the other circumstances, that the trial court regarded the arrest and police stratagem as factors which, as a matter of law, prevented a finding that defendant's statements were voluntary.

We are therefore called upon to review questions of law rather than fact. Appellate review of conclusions

of law is unfettered by deference to the view of the trial court. *First Nat. Leasing Corp.*, 81 Wis. 2d at 208, 260 N.W.2d at 253; *Browne*, 24 Wis. 2d at 511a, 129 N.W.2d at 184–85 (1964).

### Police Statements Do Not Necessarily Preclude Finding Of Voluntariness

The statement by the police to defendant that the investigation concerned a homicide and describing the range of possible charges does not, as a matter of law, render his statement involuntary and inadmissible. As said in *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978):

A truthful and noncoercive statement of the possible penalties which an accused faces may be given to the accused without overbearing one's free will. Such an account may increase the chance that one detained will make a statement. However, as long as the statement results from an informed and intelligent appraisal of the risks involved rather than a coercive atmosphere, the statement may be considered to have been voluntarily made. Thus, in *Rivers v. United States*, 400 F.2d 935 (5th Cir. 1968), where a government agent informed a suspect of the statutory penalties for lying, without using the penalties to coerce the suspect into making a statement, we held that his will had not been overcome. Similarly, in the instant case, telling the appellant in a noncoercive manner of the realistically expected penalties and encouraging her to tell the truth is no more than affording her the chance to make an informed decision with respect to her cooperation with the government.

The facts before us vary from those in *Ballard* in that there the defendant knew she had been caught. Here defendant had not acknowledged his involvement before he gave the statements. He nevertheless knew that one option, as an alternative to continued silence, was to acknowledge his involvement.

The fact that a defendant seeks a benefit by giving a statement does not make the statement involuntary. It is well settled that statements to a criminal defendant that cooperation will benefit him do not "approach creating compelling pressures which overcome the individual's will to resist." *Turner v. State,* 76 Wis. 2d 1, 22, 250 N.W.2d 706, 717 (1977), citing *State v. Cydzik,* 60 Wis. 2d 683, 692, 211 N.W.2d 421, 427 (1973). According to *Cydzik,* a statement by the police that the defendant's cooperation would be to his benefit, or even promising leniency, does not, standing alone, require a finding of involuntariness. 60 Wis. 2d at 692, 211 N.W.2d at 427.

We conclude that the interrogation technique employed by the police does not prevent a finding that defendant's statement was given voluntarily. It is but one of the total circumstances to be taken into account when determining whether defendant's statements were voluntary.

3. *Disposition Of Appeal As To Suppression Order*

We are left with a suppression order based on the trial court's decision that it could not find defendant's statements were voluntary beyond a reasonable doubt, a decision which in turn is without the support on which it rested. Whether defendant's statements were voluntary has yet to be determined.

Because the trial court's determination was grounded on the arrest and the interrogation stratagem, it made no factual findings regarding the totality of the circumstances which bear on the voluntariness of the statement. Those findings, some of which may involve credibility, are necessary to a determination of the ultimate issue of voluntariness.

We decline to search the record for undisputed facts and to draw inferences from those facts as to the ultimate issue of voluntariness. We may have the right to

do so. *See Blaszke v. State,* 69 Wis. 2d 81, 86, 230 N.W. 2d 133, 136–37 (1975). Some federal decisions have held that voluntariness is a question of law to be determined on the facts found by the trial court on the undisputed facts. *See United States v. Kreczmer,* 636 F2d 108, 110 (5th Cir. 1981) ; *Johnson v. Hall,* 605 F.2d 577, 580 (1st Cir. 1979). The scope of our review has not, however, been adequately explored, and, according to *Norwood,* a careful balancing must be made between the personal characteristics of the accused and the pressures brought on him. *Norwood,* 74 Wis. 2d at 364–65, 246 N.W.2d at 812–13.

Accordingly, we will reverse the suppression order and remand the matter to the trial court for further factual findings as to the totality of the circumstances and as to the ultimate issue of voluntariness.

4.   *Motion To Dismiss Complaint And Information*

As described in n. 1, defendant was charged in a complaint issued May 23, 1979. The court dismissed that complaint for lack of probable cause, and defendant was recharged in a second complaint. An information was subsequently filed.

Defendant contends that his motion to dismiss should have been granted because the complaint is based upon his inculpatory statements. He contends that because the statement was the product of an illegal arrest and was involuntarily given, and because that statement was essential to the showing of probable cause to support the complaint, the complaint and information must be dismissed.

Defendant was not unlawfully arrested. That ground for dismissal has no merit.

The unresolved question remains whether defendant's statement was involuntarily given and, if so, the effect of

that fact upon the complaint and information. Because we have reversed the suppression order and remanded that matter for further findings on the issue of voluntariness, we will reverse the order denying the motion to dismiss. This will permit the trial court to review the issues raised by the motion to dismiss in light of the trial court's disposition of the motion to suppress.

*By the Court.*—The order suppressing defendant's statements and denying the motion to dismiss is reversed and the matter is remanded for further findings and proceedings.